The STATE of Ohio, Appellee,

v.

WILLS, Appellant.*

[Cite as *State v. Wills* (1997), 120 Ohio App.3d 320.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 70988.

Decided June 16, 1997.

* Reporter's Note: A discretionary appeal to the Supreme Court of Ohio was not allowed in (1997), 80 Ohio St.3d 1409, 684 N.E.2d 703.

*Stephanie Tubbs Jones*, Cuyahoga County Prosecuting Attorney, and *Erika Ritt*, Assistant Prosecuting Attorney, for appellee.

*James A. Draper*, Cuyahoga County Public Defender, and *Robert M. Ingersoll*, Assistant Public Defender, for appellant.

---

PATTON, Judge.

A jury found defendant Anthony Wills guilty of one count of aggravated arson resulting from his attempt to firebomb a residence. He raises three issues in this appeal: (1) eyewitness identification, (2) "other acts" evidence, and (3) the sufficiency of the evidence.

The state's evidence showed that the victim of the offense came home sometime after 11:30 p.m. to find three broken windows in her kitchen. She reported the broken windows to the police, and then called her next-door neighbor and told her what happened. When finished with that conversation, the victim began cleaning glass from the floor. Suddenly, a plastic two-liter soft drink bottle filled with gasoline flew threw the broken windows. The charred remains of paper towels were stuffed into the mouth of the bottle. The victim testified that the bottle landed one foot away from her but bounced away. She looked and saw a figure moving near the window, but darkness from the late hour prevented her from clearly seeing the figure.

At about the same time, the neighbor's daughter and her friend were pulling out of their driveway. They, too, saw a male they later identified as defendant standing by the victim's window. Aware that someone had broken the victim's window, the neighbor's daughter and her friend began honking the car horn. When defendant heard the horn, he ran to a waiting blue pickup truck and drove away.

The next day, the victim's neighbor saw defendant speak with the victim. The neighbor heard defendant say that he was looking for Marvin because his house had been broken into. When the conversation between defendant and the victim ended, the neighbor saw defendant drive away in a light blue pickup truck.

The victim testified that she began supervising repairs to her windows when defendant approached her and asked if he could speak with her. Noticing the broken windows, defendant remarked that someone had broken into his house as well. He explained that he rented a room to the victim's son and suspected that the victim's son Marvin broke into his house and stole a television and videotape recorder while he had been out to rent videotapes at about 9:00 p.m. the previous evening. The victim told defendant that Marvin was actually her godson, and not

a family relation. She further told defendant that she did not know his whereabouts.

Another witness testified that the day after the firebombing, defendant knocked on her apartment door and said he was looking for Mary McPherson. He told the witness that McPherson's son Marvin had stolen his television and videotape recorder. Defendant also told the witness that McPherson had broken the victim's windows and thrown the firebomb into her house. He gave the witness a note and asked to her to hand that note to Mary McPherson at the first opportunity.

The note contained defendant's name and telephone number. Mary McPherson spoke to defendant the day after the firebombing and he told her that Marvin stole his television and videotape recorder while he was returning some videotapes to a rental store.

The police separately showed the neighbor's daughter and her friend photo arrays. Both identified defendant as the man they saw outside the victim's home shortly after the firebombing. When they went to execute an arrest warrant at defendant's address, the officers saw the blue pickup truck.

Defendant presented an alibi defense. His primary witness testified that defendant had been with her throughout the night of the firebombing. She stated that she and defendant attended to her brother during emergency treatment at a hospital. The witness testified that defendant arrived at the hospital between 9:00 and 9:30 p.m. and stayed with her until 2:00 a.m. the next day. Another witness testified that she and her husband picked defendant up from the hospital at 2:00 a.m.

## I

The first assignment of error complains that the trial court erred by denying defendant's motion to suppress the results of a photo array shown to the neighbor's daughter and her friend. Defendant argues that the photographs shown to these witnesses were unduly suggestive in that they did not all fairly depict suspects that matched defendant's age and body type.

The courts apply a two-step test in determining the admissibility of challenged identification testimony. First, the defendant must show that the identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. *Manson v. Brathwaite* (1977), 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140, 154; *State v.*

*Garner* (1995), 74 Ohio St.3d 49, 61, 656 N.E.2d 623, 635. If the pretrial procedures were not suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and the identification is generally admissible without any further reliability inquiry. *United States v. Sleet* (C.A.7, 1995), 54 F.3d 303, 309.

When deciding motions to suppress photographic identification procedures, the courts must determine whether the photos or procedures used were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States* (1968), 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247, 1253. Suggestiveness depends on several factors, including the size of the array, its manner of presentation, and its contents. *Reese v. Fulcomer* (C.A.3, 1991), 946 F.2d 247, 260. Stated otherwise, the test is "whether the picture of the accused, matching descriptions given by the witness, so stood out from all of the photographs as to suggest to an identifying witness that [that person] was more likely to be the culprit." *Jarrett v. Headley* (C.A.2, 1986), 802 F.2d 34, 41.

Defendant contends that four of the six photos depict men who were obviously too young to match the description given by the witnesses. He further complains that even if the age discrepancy were not apparent from the photographs, a futile attempt to black out the biographical information on the photographs made it very easy for the witnesses to determine the age of each person in the photos.

We have examined the photographs and find that the differences defendant complains of would not suggest to the identifying witnesses that defendant was more likely to be the culprit. It is not a requirement that all pictures in a photo array be of the same type. *State v. Green* (1990), 67 Ohio App.3d 72, 79, 585 N.E.2d 990, 994. Moreover, we find that the men shown in the photographs are not so disparate in age as to be impermissibly suggestive. Likewise, the alleged size difference between the men does not make it more likely that the witnesses would have chosen defendant. Although both witnesses described defendant as "pot-bellied," midsections were not shown in the photo array. Additionally, the height of the men was not apparent from the photographs.

Defendant complains that the witnesses could have discerned the age, weight and height information from the mugshot photographs because the police crudely attempted to black out that information on the photographs. We agree that the police could have done a better job at blacking out the mugshot information, but the facts of this case give us no reason to believe that the witnesses attempted to read through the blacked-out portions to make their identifications. Importantly, both witnesses and the police officer conducting the photo array testified that the

witnesses chose defendant immediately, without hesitation. Consequently, the facts do not indicate that either witness attempted to read through the blacked-out portions of the individual photographs. The first assignment of error is overruled.

## II

The second assignment of error complains that the trial court permitted the jury to hear two instances of "other acts" evidence. First, he complains that a police officer improperly referred to the photographs used in the photo array as "mug shots." Second, he complains that the state improperly framed defendant's motive for the firebombing as retaliation over a disagreement centering on drugs. Defendant argues that either instance would permit the jury to find that he had been arrested in the past or engaged in drug activity—acts that would taint the fairness of the jury.

Evid.R. 404(B) prohibits the introduction of evidence of other crimes, wrongs or acts to prove the character of a person in order to show that he acted in conformity therewith. Consequently, "[e]vidence of other crimes, wrongs or bad acts independent of, and unrelated to, the offenses for which a defendant is on trial is generally inadmissible to show criminal propensity." *State v. Woodard* (1993), 68 Ohio St.3d 70, 73, 623 N.E.2d 75, 78; *State v. Thompson* (1981), 66 Ohio St.2d 496, 497, 20 O.O.3d 411, 411–412, 422 N.E.2d 855, 856.

## A

Mug-shot photographs may be admissible if they do not provide a trier of fact with the reasonable inference that the accused has had prior criminal involvement. See *State v. Wilkinson* (1971), 26 Ohio St.2d 185, 187, 55 O.O.2d 444, 271 N.E.2d 242, 243–244. We need not determine whether the mugshots shown to the jury created a reasonable inference of defendant's prior criminal involvement pursuant to *State v. Breedlove* (1971), 26 Ohio St.2d 178, 55 O.O.2d 441, 271 N.E.2d 238, since defendant told the court that he had no objection to the photographs being introduced into evidence. In any event, the mugshot photographs would not have created a reasonable inference of defendant's prior criminal involvement because the police removed the identification markings. See *State v. Wilkinson, supra; State v. Broadnax* (Dec. 14, 1995), Cuyahoga App. Nos. 67360 and 67361, unreported, at 4, 1995 WL 739595.

The issue raised is whether the mere mention of the word "mug shot" by a state witness was enough to permit the jury to form the inference that defendant had prior criminal involvement in violation of Evid.R. 404(B).

During cross-examination of the police arson investigator, defense counsel questioned the investigator about the photographs used in the array:

"Q. And these photos, they consisted of pictures of faces of men, various men; is that correct?

"A. Yes. Known as, I guess you would call them, head shots, photos of their head, mug shots."

■ We cannot accept defendant's proposition that the one-time use of the term "mug shot" in these circumstances, by itself, creates an impermissible inference that the defendant has engaged in criminal activity. The photographs shown to the jury were obviously mugshots. They depict men standing in front and profile view, with identification cards hanging before them. The information on those cards is blacked out.

It makes little sense to permit the jury to receive into evidence photographs that are obviously mugshots, yet prohibit state witnesses from briefly mentioning that obvious fact. The police often use mugshots during investigations, and the courts have held that photographs bearing characteristics of mugshots are not *per se* inadmissible as suggesting criminal involvement. See, *e.g.*, *State v. Tolbert* (1990), 70 Ohio App.3d 372, 591 N.E.2d 325 (horizontal lines indicative of height standard does not provide reasonable inference of criminal involvement); *State v. Carney* (1990), 67 Ohio App.3d 736, 588 N.E.2d 872 (same); *State v. Nelson* (Mar. 16, 1989), Cuyahoga App. No. 54791, unreported, 1989 WL 24924 (photo array pictures showing front and side views admissible since pictures did not show police identification numbers); but, see, *State v. Washington* (Aug. 12, 1993), Franklin App. No. 93AP–122, unreported, 1993 WL 310405 (photographs showing accused in front and profile views and showing neck strap holding police identification card held to create unreasonable inference of criminal involvement).

We stress that the arson investigator's fleeting characterization of the photographs as mug shots did not serve to emphasize any prior criminal involvement by defendant. We have held that obscuring identification information on a mug shot is substantially equivalent to cropping that information from the photograph. *State v. Broadnax, supra.* Moreover, because the dates on the photographs were blacked out, it is just as likely that the jury believed the photo had been taken following defendant's arrest for arson, not prior to that arrest. *State v. Pilgrim* (Mar. 3, 1988), Cuyahoga App. No. 53513, unreported, 1988 WL 26236. Under the circumstances, we find that the single mention of the term "mug shot" did not violate Evid.R. 404(B).

Defendant also argues that the arson investigator's use of the term "mug shot" constituted an "evidentiary harpoon" calculated to prejudice defendant's rights. We find no factual support for this overbroad assertion. The quoted portion of

the transcript constitutes the sole reference to "mug shot." We have held that a brief reference by a witness that he obtained a photo of the accused from the county sheriff's department, without further elaboration, did not constitute reversible error in the absence of any police identification numerals. See *State v. Robinson* (Sept. 14, 1989), Cuyahoga App. No. 55832, unreported, 1989 WL 107167; see, also, *State v. Appleman* (Feb. 5, 1993), Muskingum App. No. CA–92–8, unreported, 1993 WL 35587. Other than this remark, nothing in the record indicates that the state or its witnesses intended to "harpoon" defendant's rights.

## B

Defendant next argues that during its closing argument, the state improperly tried to attribute defendant's crime to drugs. When commenting on why defendant would have returned to the victim's house the day after the firebombing, looking for Marvin McPherson, the prosecutor asked the jury to reject the idea that McPherson had stolen defendant's television and videotape recorder. The prosecutor stated:

"The defendant wanted something. What we know is from looking at all of this, the story about the VCR is nonsense. Marvin certainly did something terrible to this man, but it isn't stealing a VCR. It isn't doing that.

"We know this man. * * * What we know is that is an excuse. There is something very terrible that happened. But we don't know what it is. Now perhaps it could be drugs.

"MR. BUCKLEY: Objection, your Honor. This is not in evidence, your Honor.

"THE COURT: Overruled.

"MR. WISE: Why can't you call the police if somebody steals it from you? I'm sure if you go to the Fourth District and say somebody stole my drugs. I will give you a description. They are not going to help you. You have to help yourself if you use drugs, something like crack cocaine. * * * You don't take something—somebody's drugs. If you do, you are going to pay a price. Crack cocaine is that strong. You don't care about anything except the drugs. What else? Marvin has ripped the defendant off for something. We know it isn't what the defendant is telling us."

The trial court should have sustained defendant's objection because there was simply no evidence to suggest that defendant's crime was related to drugs. During trial, both parties spent a good deal of time addressing Marvin McPherson's drug problem. The state attempted to graft Marvin McPherson's drug problems onto defendant, and during its cross-examination of the defense witnesses, the state asked those witnesses whether defendant had a drug

problem. All those witnesses replied negatively. As a result, the state did not establish, either directly or indirectly, that defendant used drugs. While prosecutors have wide latitude in closing argument, they may not allude to matters not in evidence. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 14 OBR 317, 318–319, 470 N.E.2d 883, 885; *State v. Lott* (1990), 51 Ohio St.3d 160, 165–166, 555 N.E.2d 293, 299–301.

The state argues that nowhere in the quoted text of closing argument did the prosecutor make a definitive statement that the appellant "either used or possessed drugs." We disagree. At an earlier point in the closing argument, the state questioned why defendant did not report the alleged theft of the television and videotape recorder to the police. It then made the unsubstantiated leap to attribute defendant's failure to report the theft to the police as a reluctance to report stolen drugs. To be sure, the state used the pronoun "you" in the statement, but under the circumstances, that pronoun could only mean defendant as the subject of the sentence.

We further disagree with the state's assertion that because the reference to drug use was not evidence, Evid.R. 404(B) would not apply. Taken to its logical extreme, the state's assertion would sanction the use of any statement outside the record because such statements would never constitute prohibited other-acts evidence. This is clearly not the law.

Despite the error in permitting the state to refer to matters not in evidence, we conclude that the error was harmless. Before beginning closing arguments, the trial judge instructed the jury that the arguments were not evidence. We must presume that the jury followed this instruction.

The way we can assure ourselves that the jury did, in fact, follow the court's instruction is to read the entire record, disregarding the objectionable material, to determine whether there was a reasonable probability that the offending evidence contributed to defendant's conviction. *State v. Lytle* (1976), 48 Ohio St.2d 391, 2 O.O.3d 495, 358 N.E.2d 623, paragraph three of the syllabus.

Having reviewed the record, we find that the state's comment about defendant's drug use would not have contributed to defendant's conviction. The state's evidence was solid, albeit circumstantial. Eyewitnesses placed defendant on the scene at the time of the offense. Those eyewitnesses made their identifications unhesitatingly. Importantly, both eyewitnesses saw defendant run to the same truck that another witness had seen him drive the following day when he visited the victim. Even without a drug motive, the state's did offer retaliation as a possible motive for the firebombing. The jury could reasonably accept the state's suggestion that defendant firebombed the victim's house as retaliation for

McPherson's alleged theft of television equipment. This theory rang true given defendant's mistaken impression that the victim was McPherson's mother.

Defendant and his witnesses suffered in credibility. Defendant told the victim that he had been out renting a videotape when McPherson allegedly burglarized his house, but his own witnesses placed him at a hospital bedside tending to a dying person at the same time. Hospital records failed to substantiate that one defense witness who claimed to be present at the hospital with defendant actually signed authorization forms as claimed. An attending hospital nurse flatly denied seeing defendant at the hospital during the time he claimed to be with the dying person.

Under the circumstances, then, we cannot say that the improper reference to other acts reasonably contributed to defendant's conviction. The second assignment of error is overruled.

## III

The third assignment of error complains that the state's circumstantial evidence fell far short of being evidence sufficient to establish the elements of aggravated arson.

The state's case against defendant was circumstantial. In reviewing the sufficiency of circumstantial evidence, we must consider whether evidence, when viewed in a light most favorable to the state, would convince a reasonable trier of fact that the accused could be guilty beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492, 503. Contrary to defendant's assertions, circumstantial evidence need not be examined more closely than direct evidence. Circumstantial evidence and direct evidence inherently possess the same probative value and are subjected to the same standard of proof. *Id.*, paragraph one of the syllabus.

For the most part, defendant's arguments under this assignment contend that there are other reasonable theories of innocence that undermine the jury's determination of guilt. This is perhaps another way of saying that reasonable doubt exists.

Primarily, defendant argues that someone else could have thrown the firebomb through the victim's window. To support this assertion, he relies on testimony that Marvin McPherson had a criminal background and may have stolen property from persons other than defendant. Given his alibi defense, he theorizes that the eyewitnesses obviously saw another person who drove a truck similar to his own.

Defendant's speculation that other persons may have committed the offense goes primarily to the weight, not the sufficiency, of the evidence. We

previously noted that the eyewitnesses gave compelling identifications, having spotted defendant outside the victim's window at the time the firebomb entered the victim's house. Moreover, three separate witnesses identified the blue truck driven by defendant on both the night of the offense and the day following the offense. The jurors clearly did not believe defendant's alibi, and that disbelief would have been justified since the victim testified that defendant himself told her that he had been renting videotapes that evening at the same time he allegedly remained bedside at the hospital.

Defendant also argues that the state failed to prove that the firebomb posed a substantial threat of physical harm to the victim for two reasons. First, defendant claims that the firebomb had not been lit when thrown into the victim's house. Second, he maintains that the use of a plastic bottle rendered the firebomb ineffectual, thus negating any intent to cause serious physical harm.

The elements of aggravated arson are set forth in R.C. 2909.02 and required the state to prove that defendant knowingly created a substantial risk of serious physical harm to another person by means of fire or explosion. Paper towels were stuffed into the mouth of the bottle and used as a wick. Although the victim did not see the paper towels on fire as the bottle landed in the house, the victim and the arson investigator both testified that the paper towels had been charred. The charring suggested that the wick had been lit while in the bottle.

The arson investigator testified that the two-liter bottle filled with gasoline presented a serious risk of physical harm to the victim. Speaking of the victim, the investigator told the jury, "I'm surprised that she wasn't killed. * * * Because if that bottle would have split, and she was standing right there, she wouldn't have had much of a chance to get out of that house * * *."

Defendant discounted the threat of harm to the victim, noting that it is common knowledge that plastic two-liter soft drink bottles are designed not to break, and that a paper towel wick would quickly extinguish when thrown through the air. He theorizes that the perpetrator merely created a prop intended to frighten Marvin McPherson, and this would explain why such an "inept" firebomb was used.

Plastic bottles are not necessarily break-proof; they are break-resistant. In any event, the evidence showed that gasoline did leak out of the bottle when it landed, so defendant's theory that the use of a plastic bottle negated specific intent to cause serious physical harm is implausible. As for using such an "inept" firebomb, the state has no duty to distinguish between intelligent criminal plans and imprudent criminal plans as part of proving intent to commit a criminal act. See *State v. Stoudemire* (1997), 118 Ohio App.3d 752, 694 N.E.2d 86. Defendant did not counter the state's evidence showing a real and immediate threat of serious physical harm presented by the thrown plastic bottle. Accordingly, we

find that the state presented sufficient evidence to prove the elements of aggravated arson. The third assignment of error is overruled.

*Judgment affirmed.*

NAHRA, P.J., and ROCCO, J., concur.