Donald R. Hairston, Jr. was found guilty by a jury in the Montgomery County Court of Common Pleas of aggravated robbery with a firearm specification, and he was sentenced accordingly. He appeals from his conviction.
The facts and procedural history are as follows.
In January 1998, Hairston was certified to the general division of the common pleas court by the juvenile court and was indicted on one count of aggravated robbery with a firearm specification. The indictment related to the October 11, 1997 robbery of a Quick Mart convenience store located at 3503 West Seibenthaler Avenue in Harrison Township. On that date, two men entered the Quick Mart and emptied the cash register while holding two people at gunpoint. One of the men had worn a ski mask and the other had not. Yahia Alcharbaji, a store employee, later identified Hairston as the unmasked perpetrator.
Following his indictment, Hairston pled not guilty and filed a motion to suppress Alcharbaji's identification of him. After a hearing, the trial court overruled the motion. The case proceeded to a jury trial, and the jury returned a verdict of guilty on the aggravated robbery charge and the firearm specification. The trial court sentenced Hairston to serve four years of incarceration for the aggravated robbery and three additional years on the firearm specification.
Hairston raises three assignments of error on appeal.
 I. THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE DEFENDANT, BY OVERRULING THE MOTION TO SUPPRESS WITH THE FINDING THAT THE IDENTIFICATION OF DEFENDANT BY A GOVERNMENT WITNESS WAS NOT MADE UNDER UNNECESSARILY SUGGESTIVE CIRCUMSTANCES.
Hairston claims that Alcharbaji's identification of him as one of the perpetrators of the robbery occurred under circumstances that were unnecessarily suggestive such that the identification should have been suppressed. A more detailed discussion of some of the facts surrounding the identification will be helpful to our discussion of this assignment of error.
Hairston became a suspect in the Quick Mart robbery after his friend, Michael Blair, was identified as a suspect in the robbery by two men of an AK convenience store on November 5, 1997. Detective Ray Martin, who was investigating the AK robbery on behalf of the Dayton Police Department and who had identified Blair as a suspect, prepared a photo array of possible additional suspects in the AK robbery. The array included a photograph of Hairston because of his friendship with Blair. Detective Martin shared the photo array with Detective Lawrence Atchison of the Montgomery County Sheriff's Office, who was investigating the Quick Mart robbery. On November 12, 1997, Blair's picture appeared in a Crime Stopper photo array in the Dayton Daily News. Alcharbaji saw the picture and told Detective Atchison that Blair's nose resembled the nose of the masked man who had participated in the Quick Mart robbery. Detective Atchison subsequently showed Detective Martin's photo array to Alcharbaji, stating that the photo array "may contain the other suspect" in the AK robbery. Alcharbaji immediately identified Hairston as the unmasked man who had robbed him.
Hairston claims that Alcharbaji's identification of him was "irrevocably tainted" for two reasons: 1) Alcharbaji had viewed the photo array including Blair in the Dayton Daily News, and the similarity between Blair's nose and the nose of the masked Quick Mart robber reported by Alcharbaji was unreliable; and 2) Detective Atchison had told Alcharbaji that the photo array might contain a photo of a suspect in the AK robbery, even though Detective Martin had never expressly stated that Hairston was a suspect. From these factors, which are essentially undisputed, Hairston concludes that "the presentation of the photo spread to Mr. Alcharbaji as containing a picture of an accomplice of the man he had shakily identified out of the newspaper, accomplished nothing more th[a]n to implant into the witness' memory a face to pin to the individuals who had robbed him."
To challenge the admissibility of identification testimony, a defendant must show that the identification procedure was so unnecessarily suggestive as to compromise the reliability of the identification. State v. Wills (1997), 120 Ohio App.3d 320, 324. If the identification procedures were not suggestive, any questions as to the reliability of the identification go to the weight of the evidence, not its admissibility. Id. at 325, citingUnited States v. Sleet (C.A.7, 1995), 54 F.3d 303, 309. Here, the trial court concluded that there was "no indication of unnecessary suggestiveness" in the circumstances surrounding the identification of Hairston by Alcharbaji. Detective Atchison read Alcharbaji instructions indicating that the "group of photographs may or may not contain a picture of the person who committed the crime now being investigated." Even if Alcharbaji thought it likely that a suspect was among the six men pictured in the array, there were no differences in the color, size, or markings of the photos that would have enticed Alcharbaji to choose Hairston's photo over any of the others. Alcharbaji chose Hairston's photo quickly and without any difficulty. Moreover, we do not see how the alleged unreliability of Alcharbaji's identification of Blair as having a similar nose to the masked man involved in the Quick Mart robbery had any bearing on the reliability of his identification of Hairston, who was unmasked during the robbery. Likewise, we do not see how Detective Atchison's characterization of one of the individuals in the photo array as a suspect in the AK robbery affected the reliability of Alcharbaji's identification. Because Hairston failed to show that the photo array was suggestive, the trial court did not err in refusing to suppress Alcharbaji's identification testimony.
The first assignment of error is overruled.
 II. THE TRIAL COURT ERRED BY PERMITTING THE GOVERNMENT ATTORNEY TO VIOLATE THE DEFENDANT'S RIGHT TO A FAIR TRIAL BY SUBSTITUTING EMOTION FOR REASONED ADVOCACY AND DENIGRATING THE DEFENDANT'S EXPERT WITNESS, IN HIS CLOSING ARGUMENT.
Hairston contends that the prosecutor improperly interjected his personal beliefs about an expert witness's testimony into his closing argument and that the jury was unfairly influenced by the prosecutor's remarks. Hairston's complaint relates to alleged comments about the testimony of Dr. Solomon M. Fulero, an expert in the psychology of eyewitness identification, and the prosecutor's use of the term "psycho babble."
The standard for prosecutorial misconduct in closing argument is whether the statements were improper and, if so, whether they prejudicially affected the substantial rights of the accused.State v. Lott (1990), 51 Ohio St.3d 160, 165. While a prosecutor may argue that certain evidence tends to make a witness more or less credible, he may not state his own belief as to whether a witness is telling the truth because to do so would invade the jury's responsibility to determine the weight to be given to witnesses' testimony. State v. Smith (1984), 14 Ohio St.3d 13,14; State v. Carpenter (1996), 116 Ohio App.3d 615, 622. The prosecutor is entitled to a certain degree of latitude in closing argument, however, and it is within the trial court's discretion to determine the propriety of a closing argument. State v. Benge
(1996), 75 Ohio St.3d 136, 141. A conviction will be reversed only where it is clear beyond a reasonable doubt that, absent the prosecutor's comments, the jury would not have found the defendant guilty. Id.
Hairston contends that the prosecutor labeled Dr. Fulero's testimony as "scientific babble" and "psycho babble" throughout his closing argument and that those comments amounted to misconduct. Hairston's argument mischaracterizes the prosecutor's statements, however. The prosecutor admonished the jurors that, by law, they could believe Alcharbaji's testimony that Hairston was the man who had robbed him based solely on the "credibility of his testimony, the accuracy of his testimony, [and] the believability of his testimony" even though this is an "age of lasers and computers and scientific babble and psycho babble." In other words, the prosecutor encouraged the jurors to use their own common sense about whether Alcharbaji's identification testimony was truthful and accurate even though it was not supported by other scientific evidence or testimony, as demonstrated by the following passage:
 Ladies and gentlemen, your task in a less cynical world would perhaps be easier, if we hadn't been exposed to a world of lasers, of computers and psycho babble. The law still says you can say, "I believed him [Alcharbaji], and that's good enough for me," and God help us if we ever reach the day when the law says something different. This world would not be, I would suggest, worth living in.
The prosecutor did not use the terms "scientific babble" or "psycho babble" in reference to Dr. Fulero's testimony specifically at any point.
In our judgment, it was within the bounds of legitimate closing argument for the prosecutor to comment that the lack of independent, scientific corroboration of Alcharbaji's identification testimony did not prevent the jury from crediting that testimony. Moreover, these comments did not impugn the credibility of Hairston's expert witness; they merely emphasized that the jury need not rely on expert testimony in assessing Alcharbaji's credibility. Because these comments were not improper, they did not constitute prosecutorial misconduct.
The second assignment of error is overruled.
 III. DEFENDANT-APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN THAT PRIOR COUNSEL FAILED TO OBJECT TO THE IMPROPER ARGUMENT OF THE GOVERNMENT.
Hairston claims that his trial counsel was ineffective in that he failed to object to the prejudicial and improper comments made by the prosecutor during closing argument. Because we have found that the prosecutor's comment were not improper, as discussed supra, we also reject the argument that counsel acted deficiently in not objecting to those comments.
The third assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
John J. Amarante
Kenneth Z. Gall
Hon. John P. Petzold