OPINION
Defendant-Appellant, Michael Henry, was convicted after a jury trial on a charge of aggravated robbery, with a firearm specification. Following the conviction, the trial court sentenced Henry to five years in jail for aggravated robbery and three years on the firearm specification. The latter term was to be served consecutive to and after the five year definite sentence.
Henry now appeals, raising the following assignments of error:
 I. The trial court erred in admitting testimony from the detective over objection, which, in effect, bolstered the credibility of the in court identification of one of the eye witnesses to the aggravated robbery in this case.
 II. Counsel's failure to object to the prosecuting attorney's improper expression of her personal opinion as to the veracity or credibility [of] the eyewitness identification in this case did amount to the ineffective assistance of counsel.
 III. Trial counsel's failure to file or pursue a motion to suppress Maxine Alex's previous in court identification did constitute ineffective assistance of counsel under the circumstances of this case.
After considering the assignments of error, we find them without merit and will affirm the judgment of the trial court.
 I
The charge against Henry arose from a robbery of Rinaldo's Bakery on May 7, 1999. On that day, at about 11:50 a.m., a neatly dressed male entered the bakery and demanded money at gunpoint. After the clerk, Maxine Alex, handed over between $200 and $300, the robber fled on foot. Eyewitnesses to the crime included Alex, Dan Rosetti, another bakery employee, and John Stolfo, the bakery co-owner.
The crime was immediately reported to the police. However, some delay in response occurred, due to a special police celebration that was being held that day. By the time the police arrived at the scene, other customers had come into the bakery. The police cordoned off the area where the robbery took place, and did not think that anyone had touched the counter area where the robber had been. Some time later, an evidence technician came to the scene and dusted the counter and bakery door for fingerprints. Notably, the eye-witnesses did not know if the robber had touched either the bakery counter or the door.
After the preliminary evidence was gathered, Detective Bilinski handled further investigation of the crime. Based on the description of the robber, as well as other information, Bilinski suspected that Henry might be involved in the crime. As a result, Bilinski included Henry's photo in a six-photo array. Three days after the crime, Bilinski showed the array to Stolfo. Stolfo immediately identified Henry as the robber. Bilinski did not comment on whether Henry was a suspect; instead, he simply told Stolfo not to talk to the other Rinaldo employees.
The following day, Bilinski showed Rosetti a photo array that included Henry's picture. Rosetti could not identify the robber. He did choose two pictures, and Henry's picture was one of the two selected. On the third day, Bilinski showed the array to Maxine Alex. However, Alex could not make a positive identification. Based on Stolfo's identification, a wanted flyer containing Henry's picture was circulated.
Although the police took fingerprints from the scene, the prints did not belong to Henry. Further, both Alex and Stolfo gave police a description of the robber that may not have matched Henry in all respects. For example, Alex indicated that the robber was about 5'7," and did not have a heavy build. According to Stolfo, the robber was 5'7" or 5'8," and weighed 170-175 pounds. Stolfo's opinion of the height was based on a habit he had when customers left the bakery. Specifically, the bakery door was marked with various heights and Stolfo always checked the door to see how tall customers were. In contrast to this testimony, the police computer listed Henry as 6' tall and as weighing 150 pounds. Detective Bilinski changed the height information on the wanted flyer to 5'10" because he knew Henry and did not think he was 6' tall. No other information was provided about Henry's actual weight and height at the time of the crime.
In any event, on May 12, 1999, a patrol officer recognized Henry from the flyer and arrested him. A preliminary hearing was then scheduled for May 20, 1999, and Alex was subpoenaed to testify. After arriving early, Alex waited in the courtroom. At the time, Alex was sitting next to Detective Bilinski. When Alex saw a man in a jail uniform (Henry) come into the courtroom, she immediately said, "That's him!"
On September, 13, 1999, Henry's trial attorney filed a motion to suppress any statements of identification or other evidence including a photographic lineup procedure, due to alleged flaws in the procedure. Among other things, Henry challenged Alex's in-court identification. For unknown reasons, the trial court never held a suppression hearing, and did not rule on the pending motion. About six weeks after the suppression motion was filed, the case was tried before a visiting judge. The result was a hung jury.
Subsequently, on February 28 and 29, 2000, the case was retried before another judge. At that trial, Alex was allowed to testify about recognizing Henry at the preliminary hearing. In particular, Alex testified, over objection, that she said, "That's him!" when Henry walked into the courtroom for the preliminary hearing. Alex then made an in-court identification of Henry as the person who had robbed the bakery. Likewise, Detective Bilinski testified about Alex's recognition of Henry at the preliminary hearing. The only objection the defense made in this regard was to Bilinski's repetition and verification of Alex's comment, i.e., "That's him!" However, the court overruled the objection and allowed Bilinski to testify. Ultimately, the second trial resulted in a guilty verdict.
As we mentioned, Henry claims in the first assignment of error that the trial court erred in letting Detective Bilinski testify about Alex's statement. According to Henry, Bilinski's testimony was hearsay and improperly bolstered the credibility of the identification.
Evid. R. 801(C) indicates that "hearsay" is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Under this definition, repetition of the statement, "That's him!" would normally fall within the definition of hearsay, since it was obviously offered to prove the truth of the matter, i.e., that Henry was the robber. The State suggests that this was not the motive for offering the evidence; instead, the State was simply interested in showing the jury the facts surrounding the identification. While this explanation justifies Bilinski's general testimony about the setting of the preliminary hearing, it does not necessarily validate the admission of a hearsay statement going to the heart of the issues in the case.
However, in this regard, Evid. R. 801(D)(1)(c) contains an exception to the hearsay rule. Specifically, this section of the statute says that a statement is not hearsay if:
 [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is * * * one of identification of a person soon after perceiving him, if the circumstances demonstrate the reliability of the prior identification.
In State v. Parker (1990), 53 Ohio St.3d 82, the Ohio Supreme Court noted that
 [i]t is the likelihood of misidentification which violates a defendant's right to due process. Suggestive confrontations are disapproved because they increase the likelihood of misidentification. * * * Reliability is the linchpin in determining the admissibility of such evidence. * * * The central question is whether under the totality of the circumstances the identification is reliable even though the confrontation procedure was suggestive.
Id. at 87 (citations omitted).
In the present case, the confrontation procedure was close to being suggestive. As we mentioned earlier, Alex was shown a photo spread shortly after the robbery, but could not identify Henry. The preliminary hearing was then held about thirteen days after the robbery. Alex had been subpoenaed for the hearing and expected to testify as a witness. Under the circumstances, one would normally expect the accused to appear. Consistent with this expectation, Henry came into the courtroom dressed in a blue jail uniform on the day of the hearing.
On the other hand, Alex arrived early, saw a series of cases take place, and saw other people appear in uniform before Henry entered the courtroom. Significantly, no names or case names were called, and Alex testified that she did not know if the robber would be there.
In a comparable situation, the Twelfth District Court of Appeals held that the police procedures were not overly suggestive. State v. Adams (1991), 76 Ohio App.3d 268, 274. In particular, the Twelfth District relied on the fact that the courtroom was fairly crowded, and that the victim was not told when or how the assailant would appear. Based on the similarity in circumstances, we conclude that the police procedure in the current case was also not unduly suggestive. Most significant is the absence of testimony indicating that Alex knew the accused would attend, and the lack of evidence that Alex's attention was unfairly directed toward the defendant.
As we said, though, the issue is somewhat close. For example, in State v. Pearson (1996), 114 Ohio App.3d 168, the court noted that the defendant's attire (jail uniform, handcuffs, and leg irons) was "inherently prejudicial and suggestive." Id. at 184. However, in contrast to the present case, the defendant in Pearson was heavily disguised at the time of the crime and the victim had only been able to see his eyes. Id.
We also note that even where procedures are suggestive, an identification can still be found reliable. See, e.g., State v. Wills (1997), 120 Ohio App.3d 320, 324-25. Key factors in deciding if an identification is reliable include:
 the witness's opportunity to view (in the case of a voice identification, to hear) the defendant during the crime, the witness's degree of attention, the accuracy of the witness's prior description of the suspect, the witness's certainty, and the time elapsed between the crime and the identification.
State v. Waddy (1992), 63 Ohio St.3d 424, 439 (citation omitted).
According to the trial testimony, Alex observed the robber for several minutes in an area that was very bright, due to both natural and artificial light. Alex's attention was certainly riveted, as the robber pointed a gun at her and also held it to her head. Moreover, while Alex did not recall some details like the color of the robber's pants and jacket, she did give a general description of the robber's height and weight that corresponded with that of another eye-witness. The time between the crime and identification was also relatively short, i.e., less than two weeks. Most important, however, Alex's identification at the hearing was very definite, i.e., as soon as Alex saw Henry, she identified him as the robber.
A particular factor in the identification was Henry's eyes. In this regard, Alex testified that during the robbery, she "saw the anger in * * * [the robber's] face and his eyes were so protruding." Alex further testified that the pictures the police showed her were not clear and looked blurry. However, when she saw Henry in person, his features and eyes helped her identify him. Likewise, the other eye-witness (Stolfo) indicated that the robber's eyes were "piercing," and were an important factor in the identification. Accordingly, we believe that Alex's identification was reliable and that Bilinski's testimony was not hearsay under Evid. R. 801(D)(1)(c).
As a final point, even if the statement were hearsay, any error in admission was harmless beyond a reasonable doubt, since Bilinski's testimony, and even that of Alex, was merely cumulative. See e.g., State v. Williams (1988), 38 Ohio St.3d 346, 349-50. Specifically, another eye-witness, John Stolfo, identified Henry from a photo array shortly after the crime. When Stolfo testified, he was very positive and emphatic that Henry was the person who had robbed the bakery. Furthermore, while Stolfo may have misjudged Henry's height by a few inches, this was insignificant in the context of the positive identification Stolfo made using the photo array a few days after the crime.
In light of the preceding analysis, the first assignment of error is without merit and is overruled.
 II
The second assignment of error challenges trial counsel's failure to object when the prosecutor expressed a personal opinion about Henry's appearance. Specifically, during closing argument, the prosecutor referred several times to the appearance of Henry's eyes. First, the prosecutor noted that Alex had identified Henry as the robber. Then, the prosecutor said, "And what did she tell you? She told you that it was his eyes; they were the most important thing to her." The prosecutor then went on to stress that Stolfo also identified Henry, and that the "key thing" to Stolfo was "[t]he eyes, the piercing eyes."
During rebuttal argument, the prosecutor went on to make the following remarks:
 You have John Stolfo who is the first one to see the photo spread. * * * [T]he important thing is that he picked out the defendant's picture as the robber in the store. * * * He picked this particular individual.
 And what was crucial to him? What did he tell you? He visualized him with the hat on and the piercing eyes. What did Maxine tell you? What was important to her? The piercing eyes." * * *
 The crucial thing in both identifications made by Maxine Alex and by John Stolfo was the defendant's piercing eyes, the way he looked at you. And you've been here, you've observed the defendant, and I submit to you he's sitting here right now with those exact same piercing eyes. And that based on the evidence you've heard, the defendant, Michael Henry, is guilty of aggravated robbery.
No objections were made at trial to these comments. On appeal, Henry contends that the remarks were prejudicial and that counsel's failure to object was ineffective assistance of counsel.
Based on well-established authority, we find nothing improper in the above remarks. In this regard, the Ohio Supreme Court has consistently held that "[a] prosecutor may comment on a defendant's physical appearance." State v. Bey (1999), 85 Ohio St.3d 487, 497, citing State v. Lawson (1992), 64 Ohio St.3d 336, 347, and State v. Brown (1988),38 Ohio St.3d 305, 317. The comments in the present case were similar to the statement in Lawson, where the prosecutor said of the defendant in closing argument that "if anybody took the time to look over at him like I did and saw the reaction that he had to his own mother on that stand, it was chilling." 64 Ohio St.3d at 347. On appeal, the Ohio Supreme Court held that this statement was not improper. Id.
Additionally, even if the remarks in the present case could be considered improper, defense counsel failed to object. Henry says the failure to object constituted ineffective assistance of counsel. Again, however, we disagree. To prevail on a claim of ineffective assistance of counsel, the defendant must show: 1) that counsel's performance was deficient, i.e., fell below "an objective standard," and 2) that prejudice arose from counsel's performance. State v. Bradley (1989),42 Ohio St.3d 136, 137, paragraph two of the syllabus, following Strickland v. Washington (1984), 466 U.S. 668. In order to establish prejudice, the defendant must prove the existence of a reasonable probability that the trial result would have been different, but for counsel's errors. Id., paragraph three of the syllabus.
Under the facts of this case, even if we assumed that counsel's failure to object was "deficient," no prejudice resulted. As we noted above, Stolfo's eye-witness identification was more than adequate to support the jury's decision. Accordingly, the second assignment of error is without merit and is overruled.
 III.
In the third assignment of error, Henry contends that trial counsel was ineffective because he failed to file or pursue a motion to suppress Alex's prior in-court identification. As we mentioned earlier, a motion to suppress was actually filed before Henry's first trial. However, no hearing was held, and no decision on the motion was ever issued. Because the case was first tried by a visiting judge and was then retried by another judge, we think the motion was simply overlooked. Admittedly, Henry's counsel should perhaps have pursued the motion, and the court should have issued a ruling. Nonetheless, any failure in this regard did not amount to ineffective assistance of counsel, since the suppression motion would have been denied. Compare State v. Henry (July 9, 1999), Montgomery App. No. 17261, unreported, p. 5 (failure to file motion to suppress does not constitute ineffective assistance of counsel where motion would not have succeeded).
Accordingly, because trial counsel was not ineffective, the third assignment of error is without merit and is overruled.
Based on the preceding discussion, all the Defendant's assignments of error are overruled and the judgment of the trial court is affirmed.
 __________________ BROGAN, J.
FAIN, J., and YOUNG, J., concur.