OPINION
{¶ 1} Defendant, Dale Beckham, appeals from his conviction and sentence for the offenses of improperly discharging a firearm at or into a habitation and felonious assault.
 {¶ 2} On October 30, 2001, as Ronald Dixon prepared to leave the Frisch's restaurant on Needmore Road in Dayton where he was employed as a cook, Dixon was approached by a man who requested that Dixon give him a free drink. Dixon refused, and a verbal argument ensued that escalated into a physical fight. Defendant's sister became involved and was apparently injured during the fight between Defendant and Dixon.
 {¶ 3} On November 1, 2001, Defendant went to Dixon's home located at 2 George Street, Trotwood. Defendant had apparently learned where Dixon lived from police who investigated the incident at Frisch's. When Dixon heard a knock on his front door, he looked out a window to see who was there, and saw Defendant, whom he recognized as the man he had fought with at Frisch's.
 {¶ 4} When Defendant saw Dixon, Defendant stepped back from the door and began firing a gun into Dixon's residence. Dixon called 911, and ran for cover while he did. When police arrived, Dixon provided a description of Defendant, who wore the same clothing he earlier wore at Frisch's, as an African-American male, 5'6", 150 pounds, black hair, brown eyes, wearing a dark blue waist length coat, khaki pants, tennis shoes, and an orange skull cap. Dixon also told police the suspect had a mustache.
 {¶ 5} After identifying Defendant as a suspect in the shooting, Trotwood Det. Steve Derringer prepared a photospread that included a photograph of Defendant. On November 6, 2001, five days after the shooting, Det. Derringer showed the photospread to Dixon, who immediately identified Defendant as the shooter.
 {¶ 6} Defendant was indicted on one count of improperly discharging a firearm at or into a habitation, R.C. 2923.161(A)(1), and one count of felonious assault, R.C. 2903.11(A)(2). A three year firearm specification, R.C. 2941.145, was attached to both charges. Prior to trial Defendant filed a motion to suppress the pretrial identification by Dixon, arguing that the photospread was impermissibly suggestive. Following a hearing, the trial court overruled Defendant's motion to suppress the identification testimony.
 {¶ 7} Defendant was found guilty following a jury trial of both charges and the accompanying firearm specifications. The trial court sentenced Defendant to concurrent mandatory eight year terms of imprisonment. The court also merged the two firearm specifications and imposed one additional and consecutive three year term, for a total sentence of eleven years. Defendant timely appealed to this court from his conviction and sentence.
FIRST ASSIGNMENT OF ERROR
 {¶ 8} "The trial court committed prejudicial error in not granting the motion of appellant to suppress evidence resulting from the photo line up identification and photo spread testimony."
 {¶ 9} Defendant argues that the pretrial identification procedure used by police, a photographic lineup, was so unfairly suggestive as to give rise to a substantial likelihood of misidentification. Therefore, the trial court erred in not granting Defendant's motion to suppress the identification. We disagree.
 {¶ 10} When a witness has been confronted with a suspect before trial, due process requires a court to suppress the witness's identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under the totality of the circumstances. State v. Murphy,91 Ohio St.3d 516, 534, 2001-Ohio-112. The defendant must first show that the identification procedure was unduly suggestive. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure. State v. Wills (1997),120 Ohio App.3d 320, 324. If the pretrial confrontation procedure was not unfairly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. Id., at 325; State v. Beddow (March 20, 1998), Montgomery App. Nos. 16197, 16198.
 {¶ 11} Defendant argues that the photographic lineup used in this case was unduly suggestive because he is the only person among six African-American males depicted who does not have a goatee. The trial court concluded that while there may be an issue about facial hair below the chin, taken as a whole the confrontation procedure utilized, the photo line-up, was not unduly suggestive. We agree.
 {¶ 12} Det. Derringer testified at the suppression hearing regarding the computerized system he used to create the photographic line-up used in this case. After Defendant was identified as the suspect who accosted Dixon, Det. Derringer entered the Defendant's name into the police computer, which contained in its database a photograph of Defendant from the mug shot files as well as information regarding Defendant's physical features and identifiers. The police computer automatically generated photographs of five other men who are very similar to Defendant in appearance and physical features, and arranged them at random along with Defendant's photograph in a black and white six-picture photospread. This court has previously recognized that this computerized method of creating photospreads avoids most potential unfairness and almost any claim that the line-up was suggestive. Beddow, supra.
 {¶ 13} Here, the background of each photograph is identical. The photographs include only the head and shoulders of each subject. The men depicted are all African-American males of a similar age, with similar facial features including facial hair. While all of the subjects, except Defendant, have varying degrees of facial hair on the front, bottom portion of their chin, all of the subjects including Defendant also have mustaches. In Defendant's case, his mustache runs down both sides of his mouth all the way to the bottom of his chin. This feature renders any difference between the facial hair around Defendant's mouth and that of the other subjects de minimum at best. Moreover, the viewing instructions Det. Derringer read to Dixon before showing him the photospread emphasized that beards and moustaches may be easily changed, and that the photographs might or might not include a picture of the person who committed the crime.
 {¶ 14} The difference of which Defendant complains does not cause Defendant's photograph to stand out, nor would it entice Dixon to choose Defendant's photograph over the others or suggest that Defendant was more likely the culprit. This photographic line-up and the manner in which it was presented to the eyewitness, Dixon, was not unfairly suggestive. Accordingly, there is no need to further inquire into the reliability of the identification by Dixon. Beddow, supra; Wills, supra. The trial court did not err in refusing to suppress Dixon's identification testimony.
 {¶ 15} The assignment of error is overruled. The judgment of the trial court will be affirmed.
FAIN, P.J. and YOUNG, J., concur.