OPINION
{¶ 1} Defendant-Appellant, Nick E. Lovell, appeals the judgment of the Crawford County Court of Common Pleas, convicting and sentencing him for theft. On appeal, Lovell argues that the trial court erred in denying his motion to suppress suggestive photographic evidence; that the trial court improperly sentenced him; and, that the trial court erred in its determination of the amount of restitution he was ordered to pay. Finding that the trial court did not err in denying his motion to suppress and in its determination of the amount of restitution, we affirm the conviction of the trial court and the amount of restitution Lovell was required to pay. However, based upon the Ohio Supreme Court's decision in State v. Foster, 109 Ohio St.3d 1,2006-Ohio-856, we vacate Lovell's prison sentence and remand the matter for further proceedings consistent with Foster.
 {¶ 2} In November of 2002, the Crawford County Grand Jury indicted Lovell on one count of theft in violation of R.C.2913.02(B)(3), a felony of the fourth degree.
 {¶ 3} In December of 2004, Lovell entered a not guilty plea to the November 2002 indictment.
 {¶ 4} In January of 2005, Lovell moved to suppress the use of evidence relating to any out of court identification of Lovell by Paul Brinkman, the victim. In his motion to suppress, Lovell argued that the police used unauthorized and coercive methods to obtain an identification of him. Specifically, Lovell asserted that the police only showed Brinkman two photos, one of himself and one of a jailhouse informant. Subsequently, the trial court held a hearing on Lovell's motion to suppress, where the following testimony was heard:
 {¶ 5} Brinkman testified that some men came to his house in April of 2002 and offered to seal his blacktop driveway. Brinkman stated that he agreed to let the men seal his driveway for $2,400.00. Brinkman testified that he gave one of the men a check for $2,400.00. Brinkman continued that the next morning, the same man came back and asked for an additional check because the bank was holding the first check since Brinkman allegedly misspelled the name on the first check. Brinkman testified that he issued an additional check for $2,400.00 and gave it to the man. Additionally, Brinkman stated that both checks were cashed at different banks. Finally, on the record, Brinkman identified Lovell as the man to whom he gave both checks.
 {¶ 6} Detective John Butterworth, who was the investigating officer in this case, testified that on April 16, 2002, he spoke with Brinkman about a complaint Brinkman wanted to make. Detective Butterworth also noted essentially the same facts as Brinkman. Additionally, Detective Butterworth testified that Scott Shepherd[1] had endorsed both checks and that both checks were cashed.
 {¶ 7} Detective Butterworth also testified that in July of 2002, he talked to Shepherd, who was incarcerated, at the Marion County Jail. Detective Butterworth continued that as a result of this conversation, he was directed to Lovell. Detective Butterworth also noted that he obtained a picture of Lovell and a picture Shepherd. Detective Butterworth further stated that in September of 2002, he showed these pictures to Brinkman, who without any trepidation or doubt identified Lovell as the person to whom he gave the checks. Finally, Detective Butterworth noted that Lovell, who was the person in the picture Brinkman identified, was in the courtroom.
 {¶ 8} On cross-examination, Detective Butterworth agreed that a normal photo line up would include "six people of similar appearances and ages." (Tr. p. 12). However, Detective Butterworth stated that he only used two pictures in this case, because Shepherd and Lovell were his two suspects, and they had both been at Brinkman's house. Detective Butterworth also noted that the photo line up included two photographs of Lovell and one photograph of Shepherd.
 {¶ 9} Additionally, Detective Butterworth agreed that there were many differences in the photographs. Detective Butterworth agreed that Lovell had "very long, mullet type hair" and Shepherd had "very short, buzz cut hair." (Tr. p. 14). Detective Butterworth also agreed that in the pictures, Lovell was identified by a Delaware Police Department tag under his face and Shepherd was not identified in any way under his face. Detective Butterworth also stated that he did not crop Lovell's picture to remove the Delaware Police Department tag, because "[he] didn't want to alter the photographs." (Tr. p. 15). Also, on re-direct examination, Detective Butterworth noted that Shepherd was in an orange jumpsuit, typically worn by inmates of the Crawford County Jail.
 {¶ 10} In February of 2005, the trial court overruled Lovell's motion to suppress.
 {¶ 11} In August of 2005, the trial court held a change of plea hearing. At this hearing, Lovell changed his plea from not guilty to no contest to the one count of theft. Further, Lovell entered a waiver of the facts and stipulated to a finding of guilty to the charge in the November 2002 indictment. The trial court found these motions well taken and entered a finding of guilty against Lovell on the charge of theft in violation of R.C.2913.02(B)(3), a felony of the fourth degree.
 {¶ 12} In September of 2005, the trial court held a sentencing hearing. At this hearing, the trial court found that "the shortest term of imprisonment would demean the seriousness of the offender's conduct and not adequately protect the public from further crime * * *." (Sentencing Tr. p. 6). Accordingly, the trial court sentenced Lovell to a term of fourteen months in prison, which was more than the minimum sentence provided for a fourth degree felony under R.C. 2929.14(A)(4). Lovell was also awarded a one day credit for time spent in custody in this case. Additionally, Lovell was subject to a period of up to three years of post release control. Further, Lovell was ordered to pay the costs of supervision, confinement, and prosecution as well as restitution to Brinkman in the amount of $4,800.00.
 {¶ 13} It is from this judgment Lovell appeals, presenting the following assignments of error for our review:
 Assignment of Error No. I THE TRIAL COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS THEPHOTOGRAPHIC ARRAY WHICH WAS SO SUGGESTIVE AS TO LEAD TODEFENDANT'S (Sic.) WRONGFUL IDENTIFICATION.
 Assignment of Error No. II THE TRIAL COURT IMPROPERLY SENTENCED DEFENDANT (Sic.) TO ALENGTHY PRISON TERM BASED UPON FACTORS NOT PROPERLY PROVEN NORSHOWN IN THE RECORD.
 Assignment of Error No. III THE TRIAL COURT ERRED IN ORDERING COMPLETE RESTITUTION, WHERETHE DEFENDANT DID PERFORM SOME SERVICES FOR THE VICTIM, EVENTHOUGH SAID SERVICES WERE NOT OF THE FULL CONTRACTUAL VALUE.
 {¶ 14} Due to the nature of Lovell's assignments of error, we choose to address them out of order.
 Assignment of Error No. I {¶ 15} In his first assignment of error, Lovell argues that the trial court erred in denying his motion to suppress the use of evidence relating to any out of court identification of Lovell by Brinkman. Specifically, Lovell asserts that the police used unauthorized and coercive methods to obtain an identification of him. Additionally, Lovell asserts that the use of only two photographs lead to his misidentification. We disagree.
 {¶ 16} In reviewing a motion to suppress, the trial court is in the best position to resolve questions of fact and evaluate witness credibility as it assumes the role of trier of fact.State v. Mills (1992), 62 Ohio St.3d 357, 366, citing State v.Fanning (1982), 1 Ohio St.3d 19, 20. An appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Williams
(1993), 86 Ohio App.3d 37, 41, overruled on other grounds as stated in Village of McComb v. Andrews (Mar. 22, 2000), 3d Dist. No. 5-99-41; see also State v. Madden (Feb. 20, 2001), 3d Dist. No. 14-2000-32. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Williams, 86 Ohio App.3d at 41.
 {¶ 17} When a motion to suppress concerns photo identification procedures, the court must determine whether the photos or procedures used were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States (1968),390 U.S. 377, 384.
 {¶ 18} Courts apply a two-prong test in determining the admissibility of challenged identification testimony. First, the defendant bears the burden of demonstrating that the identification procedure was unnecessarily suggestive. If this burden is met, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Page, 8th Dist. No. 84341,2005-Ohio-1493. "Stated differently, the issue is whether the identification, viewed under the totality of the circumstances, is reliable despite the suggestive procedure." State v. Wills
(1997), 120 Ohio App.3d 320, 324-25, citing Manson v.Brathwaite (1977), 432 U.S. 98, 114.
 {¶ 19} The Supreme Court has set forth the following factors to consider regarding potential misidentification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."Neil v. Biggers (1972), 409 U.S. 188, 199-200. The trial court must review these factors under the totality of the circumstances. Id. Furthermore, "[a]lthough the identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the subsequent in-court identification." State v. Merrill (1984), 22 Ohio App.3d 119,121; State v. Moody (1978) 55 Ohio St.2d 64, 67.
 {¶ 20} In the instant case, our first step is to determine whether Lovell has established that the identification procedure was unreasonably suggestive. On its face, the photo array contained three photos of Caucasian males of similar age; however, two of the photos were of Lovell. Also, Lovell's photographs were in black and white, while Shepherd's photograph was in color. Additionally, Lovell had long dark hair and a beard in his photos while Shepherd had short light brown or blonde hair and a goatee in his photo. Lovell's photographs included a Delaware Police Department tag and appear to be a standard set of "mug shots", depicting front and side views of Lovell, while Shepherd's photograph was a front view with Shepherd in an orange jumpsuit from the Crawford County Jail and no signs indicating that he was actually incarcerated. Finally, Detective Butterworth only used photographs of two people, both of whom were at Brinkman's residence to seal his driveway, without including photographs of similar people not involved with the driveway sealing. Obviously, there were numerous departures from standard procedure in the presentation of this photo "lineup." Accordingly, we find that Lovell has established that the identification procedure was unreasonably suggestive.
 {¶ 21} Having found that Lovell satisfied his burden of demonstrating that the identification procedure was unreasonably suggestive, we must determine whether the identification was reliable despite the suggestive procedure. Wills, supra. In order to determine the reliability of the identification, we must consider the factors set forth in Biggers, supra.
 {¶ 22} Reviewing these factors, we find that Brinkman's identification of Lovell was sufficiently reliable. As the trial court stated in its journal entry:
It was established, through the testimony of [DetectiveButterworth] and [Brinkman] that no suggestion was inferred bythe deputy to the victim as to who to identify in the photoarray. Although approximately five months had passed between theincident and the photo identification, [Detective Butterworth]observed no confusion on the part of Mr. Brinkman. [Brinkman] inthis case offered testimony as to the amount of time he had toobserve [Lovell] at his home. [Brinkman] met with [Lovell] andthe two men with him, on the day [Lovell] was hired to seal thedriveway and also observed them for approximately one and a halfhours while they completed the job. Mr. Brinkman demonstrated ahigh degree of certainty when he identified [Lovell] sitting inthe courtroom as the person he had previously identified in thephoto array. During cross examination, [Brinkman] showed thatalthough he is 88 years old he suffers no physical or mentalimpairment that would affect his ability to accurately identify[Lovell].
(Feb. 9, 2005 Journal Entry p. 2).
 {¶ 23} Upon our review of the record, the trial court's findings were supported by competent, credible evidence. Thus, accepting them as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Based on the totality of the circumstances, we find that the identification procedure was impermissibly suggestive as to give rise to a substantial likelihood of misidentification; however, we find that Brinkman's identification of Lovell was sufficiently reliable. Therefore, we find that the trial court properly denied Lovell's motion to suppress.
 {¶ 24} Accordingly, Lovell's first assignment of error is overruled.
 Assignment of Error No. III {¶ 25} In his third assignment of error, Lovell argues that the trial court erred when it ordered him to pay restitution in the amount of $4,800.00. Specifically, Lovell asserts that it was uncontested that he and two other men did work and applied materials to Brinkman's driveway and that the amount of restitution that the trial court ordered should have been reduced by the value of the material and labor that Lovell and the other two men expended to seal Brinkman's driveway.
 {¶ 26} Before addressing the merits of the assignment, we observe that Lovell did not object to the amount of restitution that he was ordered to pay in the court below. Because Lovell failed to object, we can only address the alleged error under a plain error standard. State v. Williams (1977),51 Ohio St.2d 112; Crim.R. 52(B). We recognize plain error "`with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Barnes,94 Ohio St.3d 21, 27, 2002-Ohio-68, quoting State v. Long,53 Ohio St.2d 91, para. three of the syllabus. Consequently, plain error exists only where there is a deviation from a legal rule, the error constitutes an "obvious" defect in the trial proceeding, and the error affected a defendant's "substantial rights."Barnes, 94 Ohio St.3d at 27.
 {¶ 27} R.C. 2929.18(A) permits a trial court that is imposing a sentence for a felony conviction to sentence the offender to any financial sanction or combination of financial sanctions authorized by law. Among the sanctions authorized by R.C.2929.18(A) is restitution. R.C. 2929.18(A)(1) provides, in pertinent part:
Financial sanctions that may be imposed pursuant to thissection include, but are not limited to, the following:
 (1) Restitution by the offender to the victim of theoffender's crime or any survivor of the victim, in an amountbased on the victim's economic loss. If the court imposesrestitution, the court shall order that the restitution be madeto the victim in open court, to the adult probation departmentthat serves the county on behalf of the victim, to the clerk ofcourts, or to another agency designated by the court. If thecourt imposes restitution, at sentencing, the court shalldetermine the amount of restitution to be made by the offender.If the court imposes restitution, the court may base the amountof restitution it orders on an amount recommended by the victim,the offender, a presentence investigation report, estimates orreceipts indicating the cost of repairing or replacing property,and other information, provided that the amount the court ordersas restitution shall not exceed the amount of the economic losssuffered by the victim as a direct and proximate result of thecommission of the offense. If the court decides to imposerestitution, the court shall hold a hearing on restitution if theoffender, victim, or survivor disputes the amount.
 {¶ 28} When ordering restitution, the trial court must limit its award to the actual economic loss caused by the crime for which the offender was convicted. State v. Hafer (2001),144 Ohio App.3d 345, 348, 2001-Ohio-2412; see, also, State v. Hooks
(2000), 135 Ohio App.3d 746, 749. "Economic loss" is defined as:
[A]ny economic detriment suffered by a victim as a direct andproximate result of the commission of an offense and includes anyloss of income due to lost time at work because of any injurycaused to the victim, and any property loss, medical cost, orfuneral expense incurred as a result of the commission of theoffense. "Economic loss" does not include non-economic loss orany punitive or exemplary damages.
R.C. 2929.01(M).
 {¶ 29} Here, Brinkman testified, during the suppression hearing, that he had another contractor come to his residence to redo the driveway sealing; that the contractor stated that spraying the driveway sealer onto the driveway, as Lovell did, provides only a thin coat of sealer and was ineffective; that the second contractor sealed his driveway with a thick and heavy material which was spread with a squeegee; and, that Lovell charged him an exorbitant amount to seal his driveway. Also, Brinkman requested restitution in the amount of $4,800.00; the total amount for both checks he issued to Lovell. Additionally, the presentence investigation report provided that Brinkman suffered $4,800.00 in economic harm. Further, at sentencing, the trial court determined that Lovell should be required pay restitution and ordered Lovell to pay restitution of $4,800.00. Finally, Lovell never disputed nor provided any evidence to contradict the trial court's determination of the amount of restitution. As a result, we find that the trial court's restitution order did not affect Lovell's substantial rights and we find that the trial court did not commit plain error when it ordered Lovell to pay restitution in the amount of $4,800.00.
 {¶ 30} Accordingly, Lovell's third assignment of error is overruled.
 Assignment of Error No. II {¶ 31} In his second assignment of error, Lovell argues that the trial court erred when it sentenced him to more than the minimum term of imprisonment allowable for a fourth degree felony under R.C. 2929.14(A)(4). Specifically, Lovell asserts that the record fails to support the trial court's sentence.
 {¶ 32} The Supreme Court of Ohio recently addressed constitutional issues concerning felony sentencing in State v.Foster, supra. In Foster, the Supreme Court of Ohio held that portions of Ohio's felony sentencing framework are unconstitutional and void, including R.C. 2929.14(B), which requires judicial findings for a prison sentence of more than the minimum term. 2006-Ohio-856, at ¶ 61. As noted above, the trial court herein made specific findings under R.C. 2929.19(B), when determining Lovell's sentence. Pursuant to the ruling of the Ohio Supreme Court in Foster, we find that Lovell's prison sentence is void as being based upon unconstitutional statutes.
 {¶ 33} Accordingly, Lovell's second assignment of error is sustained.
 {¶ 34} Having found no error prejudicial to the appellant in the particulars assigned and argued in assignments of error I and III, but having found error prejudicial to the appellant in the particulars assigned and argued in assignment of error II, we affirm the judgment of the trial court, but we vacate Lovell's prison term and remand the matter for further proceedings pursuant to Foster, supra.
Judgment Affirmed in Part, Reversed in Part, And CauseRemanded.
 Bryant, P.J., Concurs.
 Cupp, J., Concurs in Judgment Only.
[1] We note that the record of this case has Scott Shepherd's last name spelled "Shepard." Additionally, Brinkman testified that he spelled Scott Shepherd's last name on the checks, "S-h-e-p-a-r-d" and "S-h-e-p-e-r-d" (Tr. p. 31); however, Appellant's brief and Detective Brinkman's police report use the spelling "Shepherd." We will use Appellant's and Detective Brinkman's spelling throughout this opinion.