OPINION
{¶ 1} Defendant-appellant, Ronald T. Simpson, appeals from the judgment of the Columbiana County Court of Common Pleas convicting him of one count of aggravated arson and one count of arson following a jury trial and the sentence that followed.
 {¶ 2} In the early morning hours of January 4, 2001, Scott Borelli reported to the East Palestine Police Department dispatcher that his back porch was on fire. When the fire and police departments arrived at the Borelli residence at 342 East Taggart Street, Officer Clyde Hoffmeister (Officer Hoffmeister) noticed a trail of footprints in the snow leading away from the Borelli residence. While following the footprints, Officer Hoffmeister was dispatched to a burning truck less than a block away. When he arrived at the truck, Officer Hoffmeister again noticed footprints leading away from the scene. He followed the footprints, which he noticed veered off to Kenneth Louk's garage and back down to the street. The footprints stopped at 543 East Taggart Street, where appellant resided with his parents.
 {¶ 3} Officer Hoffmeister and Officer James Brown (Officer Brown) knocked on the door and appellant's father, Paul Simpson (Simpson), let them in. They asked Simpson where appellant was and Simpson went upstairs and got appellant, who claimed to be asleep. Appellant claimed he had not been out that night since nine o'clock. The officers asked appellant for the shoes and pants he had worn that night. Appellant went back upstairs and returned with the boots and pants he claimed to have worn that night. The officers noted that the bottom thee inches of the pant legs were damp as were the boots. The officers also noted a puddle of water just inside the door.
 {¶ 4} At some point, the officers searched appellant's residence. During their search, they came across a sawed-off shotgun and some cocaine in appellant's room.
 {¶ 5} Additionally, on January 4, Kenneth Louk noticed a set of footprints in the snow across his neighbor's yard leading to his garage and away. He testified that he discovered his motorcycle seat was scorched, as was a bag of birdseed in his garage.
 {¶ 6} A Grand Jury indicted appellant on one count of aggravated arson in violation of R.C. 2909.02(A)(2), two counts of arson in violation of R.C. 2909.03(A)(1), one count of possession of a controlled substance in violation of R.C. 2925.11(A), and one count of possession of a dangerous ordnance in violation of R.C. 2923.17(A). The case proceeded to two separate jury trials, one on the possession charges and the second on the aggravated arson and arson charges. The present appeal involves only the trial on the aggravated arson and arson charges.[1] The second trial commenced on May 14, 2001. The jury found appellant guilty of one count of aggravated arson and one count of arson and not guilty on one count of arson.
 {¶ 7} On June 8, 2001, the trial court entered its judgment entry of sentence, sentencing appellant to seven years incarceration for the aggravated arson conviction and twelve months incarceration for the arson conviction, to be served concurrently. Appellant filed his timely notice of appeal on July 3, 2001.
 {¶ 8} Appellant raises six assignments of error, the first of which states:
 {¶ 9} "THE APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION BY THE PROSECUTOR'S IMPROPER COMMENTS AND PURPOSEFUL COURSE OF MISCONDUCT."
 {¶ 10} Plaintiff-appellee, the State of Ohio, attempted to show that on the night of the fires, appellant also broke into James Downey's (Downey) pickup truck and stole his ashtray. The circuit of footprints in the snow from appellant's house to the fires and back also led to Downey's truck and the morning after the fires, Downey discovered his ashtray was missing.
 {¶ 11} Appellant argues that appellee committed prosecutorial misconduct throughout the trial. Specifically, he points to a comment made by the prosecutor during closing arguments that he alleges was prejudicial. The prosecutor stated:
 {¶ 12} "Ask yourselves, ladies and gentlemen, who breaks into an S-10 pickup truck in the back of Jim Downey's house, leaves the wallet and the cell phone sitting there, and takes an ash tray? I'll tell you who, a drunk that needs an ashtray for his S-10 pickup truck." (Tr. 657-58).
 {¶ 13} The trial court sustained appellant's objection to this comment stating that it was beyond the scope of the evidence and ordered it stricken. (Tr. 658). Appellant contends this comment was part of a calculated effort on the part of the prosecutor throughout the trial to prejudice him. He also points to the prosecutor's direct examination of Downey where Downey testified that on the night of the fires his ashtray was missing from his truck. (Tr. 324). The prosecutor asked Downey if anything else was taken from his truck, to which he responded "no." (Tr. 326). He then asked Downey whether his truck was similar to a Chevrolet S-10 (the kind of truck appellant owns). (Tr. 327). Again, the court sustained appellant's objection ruling that Downey was not qualified to answer that question. (Tr. 327). Finally, appellant argues the prosecutor should not have introduced the title of appellant's truck. Appellant objected to this piece of evidence. (Tr. 445). The trial court overruled the objection but stated it would consider later whether to allow the argument the prosecutor wanted to make. (Tr. 447).
 {¶ 14} The standard of review for prosecutorial misconduct is whether the comments and/or questions by the prosecution were improper, and, if so, whether they prejudiced appellant's substantial rights. Statev. Treesh (2001), 90 Ohio St.3d 460, 480. Prosecutorial misconduct will not provide a basis for reversal unless the misconduct can be said to have deprived the appellant of a fair trial based on the entire record.State v. Lott (1990), 51 Ohio St.3d 160, 166.
 {¶ 15} Appellant focuses on the prosecutor's statement during closing arguments. Considerable latitude is afforded to counsel during closing argument. State v. Mauer (1984), 15 Ohio St.3d 239, 269. Furthermore, the trial court sustained appellant's objection to the prosecutor's comment about the ashtray and ordered it stricken from the record. (Tr. 658). Additionally, the court sustained appellant's objection to the prosecutor's question to Downey regarding the similarity between his truck and a Chevrolet S-10. (Tr. 327). During its instructions to the jury the court stated:
 {¶ 16} "Now I repeat that the opening statements of the lawyers and the closing statements of the lawyers are not evidence, and they are merely designed to assist you in understanding the evidence.
 {¶ 17} "In fact, any statement made by counsel during this case is not evidence.
 {¶ 18} "Any statements during the course of the trial, or any questions throughout the course of the trial to which I sustained an objection or which I instructed you to disregard, or which I ordered stricken from the record are also not evidence, and you must treat those as if you did not hear them." (Tr. 665).
 {¶ 19} Thus, the trial court took proper measures to ensure that the jury did not consider the prosecutor's allegedly prejudicial statement and question. A jury is presumed to follow the instructions, including curative instructions, given by a trial judge. State v. Loza
(1994), 71 Ohio St.3d 61, 75. There is no evidence that indicates that the jury disregarded the court's instructions.
 {¶ 20} Appellant also alleges that the prosecutor prejudiced him by introducing appellant's truck title into evidence. Appellant objected, but the court overruled the objection. (Tr. 445, 447). The court also ruled that although it was allowing appellee to introduce the title, it would later determine if it would allow the prosecutor to make the argument it wished to make. (Tr. 447). Since no other evidence was introduced regarding the trucks, the court did not allow the prosecutor to make his argument regarding the similarity in the trucks and the ashtray during closing arguments. Thus, appellant was not denied a fair trial on this basis.
 {¶ 21} Accordingly, appellant's first assignment of error is without merit.
 {¶ 22} Appellant's second assignment of error states:
 {¶ 23} "THE APPELLANT WAS DENIED HIS RIGHT TO DUE PROCESS OF LAW UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WHEN THE TRIAL COURT ALLOWED INTO EVIDENCE OVER DEFENSE COUNSEL'S OBJECTION STATE'S EXHIBIT NO. 35 A MOTOR VEHICLE TITLE TO A TRUCK BELONGING TO THE DEFENDANT."
 {¶ 24} Appellant argues the trial court should not have permitted appellee to introduce the title to his truck because it was irrelevant. Appellant contends that since the court sustained his objections regarding the ashtray and truck, his truck title was irrelevant. In the alternative, appellant argues that if the truck title was relevant, the court still should have excluded it because its probative value was substantially outweighed by the danger of unfair prejudice.
 {¶ 25} The admission and exclusion of evidence are within the broad discretion of the trial court. State v. Mays (1996),108 Ohio App.3d 598, 617. Abuse of discretion is more than a mere error of judgment; it is conduct that is arbitrary, capricious, unreasonable, or unconscionable. State v. Moreland (1990), 50 Ohio St.3d 58, 61.
 {¶ 26} Given the trial court's broad discretion in evidentiary matters, the court did not abuse this discretion in admitting the truck title into evidence. When the court admitted the title it was still possible appellee would produce more evidence to support its theory that appellant took Downey's ashtray on the night in question, thus placing him at another point along the circuit of footprints. Furthermore, even if the evidence was irrelevant as appellant argues, it does not appear the introduction of the truck title prejudiced him. Since appellee did not fully develop its theory, it is highly unlikely that the jury even considered the truck title in rendering its verdict. "Absent a reasonable possibility that improperly admitted evidence contributed to a conviction, reversal is not required." State v. Parks (Mar. 22, 1996), 2nd Dist. No. CA 14906, citing State v. Brown (1992), 65 Ohio St.3d 483.
 {¶ 27} Thus, appellant's second assignment of error is without merit.
 {¶ 28} Appellant's third and fourth assignments share a common basis of law and fact, thus we will discuss them together. Appellant's third assignment of error states:
 {¶ 29} "MR. SIMPSON'S DUE PROCESS RIGHTS UNDER ARTICLE I, SECTION 16 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION WERE VIOLATED AND HE WAS IMPROPERLY DENIED A CRIM.R. 29 ACQUITTAL WHEN HIS CONVICTIONS FOR ARSON AND AGGRAVATED ARSON WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."
 {¶ 30} Appellant's fourth assignment of error states:
 {¶ 31} "THE JURY'S VERDICTS AND DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 32} Appellant argues that his convictions were against both the sufficiency of the evidence and the manifest weight of the evidence. He claims that the record is devoid of any evidence of how the fires were started or who started them.
 {¶ 33} Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.State v. Smith (1997), 80 Ohio St.3d 89, 113. In essence, sufficiency is a test of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.Smith, 80 Ohio St.3d at 113.
 {¶ 34} Alternatively, in determining whether a verdict is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences and determine whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Thompkins,78 Ohio St.3d at 387. "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.'" Id. (Emphasis sic.) In making its determination, a reviewing court is not required to view the evidence in a light most favorable to the prosecution but may consider and weigh all of the evidence produced at trial. Id. at 390.
 {¶ 35} Still, determinations of witness credibility, conflicting testimony, and evidence weight are primarily for the trier of the facts.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 36} The jury convicted appellant of aggravated arson and arson. R.C. 2909.02 defines aggravated arson and states in pertinent part:
 {¶ 37} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 38} "* * *
 {¶ 39} "(2) Cause physical harm to any occupied structure[.]"
 {¶ 40} R.C. 2909.03 defines arson and provides in pertinent part:
 {¶ 41} "(A) No person, by means of fire or explosion, shall knowingly do any of the following:
 {¶ 42} "(1) Cause, or create a substantial risk of, physical harm to any property of another without the other person's consent[.]"
 {¶ 43} Thus, in order to support the conviction on aggravated arson the evidence had to show: (1) Appellant; (2) by means of fire or explosion; (3) knowingly; (4) caused physical harm to the Borelli residence; (5) while it was occupied.
 {¶ 44} To support the arson conviction the evidence had to show: (1) Appellant; (2) by means of fire or explosion; (3) knowingly; (4) caused, or created a substantial risk, of physical harm to Reidy's truck; (5) without Reidy's consent.
 {¶ 45} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).
 {¶ 46} When viewing the evidence in the light most favorable to the prosecution, sufficient evidence exists to support the jury verdict against appellant. The evidence revealed that both the Borelli residence and Reidy's truck were on fire on the night in question. (Tr. 181, 218). It revealed that the Borelli home was occupied at the time. (Tr. 182). Reidy's testimony demonstrated that he did not give appellant permission to set fire to his truck. (Tr. 217-25). Officer Hoffmeister testified he found a gas can next to Reidy's truck. (Tr. 455). The evidence also demonstrated that a path of footprints in the snow led from appellant's back porch to the side yard of the Borelli residence and to Reidy's truck in a circuit and back to appellant's porch. (Tr. 451-479). Furthermore, Officer Brown testified that the tread pattern of appellant's boots matched that found in the footprints. (Tr. 349-51). Officers Brown and Hoffmeister testified there was only one set of footprints in the snow. (Tr. 388, 466). The officers also testified appellant's pant legs and boots were damp when they asked to see them around 3:45 a.m. and that there was a puddle of water near the back door. (Tr. 344, 476). Additionally, appellant claimed that he was home asleep when the fires were blazing, approximately 3:11 a.m. (Tr. 605). However, no one but appellant was able to testify for certain that he was home between the hours of 2:33 and 3:45 a.m. (Tr. 612).
 {¶ 47} Given this evidence, one could draw the conclusion that appellant left his house, walked to the scenes of both of the fires and walked back home. "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." State v. Jenks (1991),61 Ohio St.3d 259, 272. Ohio's courts have consistently found that circumstantial evidence can be sufficient to sustain an arson conviction. State v. Webb (June 25, 1998), 8th Dist. No. 72588 citing,State v. Zayed (Aug. 7, 1997), 8th Dist. No. 71039; State v. Wills
(1997), 120 Ohio App.3d 320; State v. Weber (1997), 124 Ohio App.3d 451;State v. Alba (June 2, 1995), 6th Dist. No. S-94-018; State v. Wright
(Dec. 30, 1994), 3rd Dist. No. 3-92-24.
 {¶ 48} Although no direct evidence was presented that appellant knowingly started the fires, such can be inferred. This court has held that intent can be inferred from relevant circumstantial evidence, so long as such an inference is not based on the mere stacking of inference upon inference. State v. Taylor, 7th Dist. No. 98-JE-31, 2001-Ohio-3162, citing State v. Cowans (1999), 87 Ohio St.3d 68, 78. In this case, we are able to infer that the fires were knowingly set due to the following facts. Two fires were set within close proximity of time and space to each other. A circuit of footprints connects the two fires. There were no other footprints in the snow. Given these facts, we can infer that whoever set the fires acted knowingly as opposed to accidentally or negligently. Appellee was not required to produce a witness who actually saw appellant set the fires. Weber, 124 Ohio App.3d at 462, citing Statev. Hoak (Aug. 9, 1995), 9th Dist. No. 94CA005917. "`[T]he element of knowledge required for a finding of aggravated arson can be established by circumstantial evidence.'" Id.
 {¶ 49} From the circumstantial evidence presented, one can reasonably conclude that appellant knowingly started the fires. When viewing the evidence in the light most favorable to the prosecution, sufficient evidence exists on the record to support appellant's convictions.
 {¶ 50} Accordingly, appellant's third assignment of error is without merit.
 {¶ 51} Appellant's manifest weight argument is equally unpersuasive. In addition to the above testimony, appellant took the stand in his own defense. Appellant testified that he went out earlier in the evening of January 3 and returned home by approximately 9:15 p.m. (Tr. 594). Appellant further testified he was at home asleep during the time in question. (Tr. 594-96). However, no other witness was able to verify his story. Appellant's friend Tracy McNair (Ms. McNair) testified, and phone records confirmed, that appellant was at home and talked to Ms. McNair at 2:31 a.m. for a little over two minutes. (Tr. 281). Appellant's father testified that he observed appellant lying on the kitchen floor around two o'clock that morning. (Tr. 556). His father testified he next saw appellant when the police arrived at his house at approximately 3:20 a.m. and he went upstairs to get appellant out of bed. (Tr. 573). According to Officer Hoffmeister, the officers did not arrive at appellant's house until 3:45 a.m. (Tr. 471).
 {¶ 52} The trier of fact is in the best position to determine witnesses' credibility and resolve conflicting testimony. DeHass,10 Ohio St.2d 230 at paragraph one of the syllabus. The jury was able to listen to appellant's story while taking into account his demeanor, voice inflections and body language. We shall not disturb the jury's findings on the evidence since competent, credible evidence exists to support their verdict.
 {¶ 53} Accordingly, appellant's fourth assignment of error is without merit.
 {¶ 54} Appellant's fifth assignment of error states:
 {¶ 55} "THE COURT ERRED IN SENTENCING THE DEFENDANT-APPELLANT TO A PRISON TERM FOR THE ARSON CONVICTION."
 {¶ 56} Appellant argues that the trial court should not have imposed a prison term on him for his arson conviction because it did not specifically find that any of the factors listed in R.C.2929.13(B)(1) applied to him.
 {¶ 57} In appellant's case, arson is a felony of the fourth degree. R.C. 2909.03 (B)(2)(b). The possible sentences for a fourth degree felony are six, seven, eight, nine, ten, eleven, twelve, thirteen, fourteen, fifteen, sixteen, seventeen, or eighteen months. R.C. 2929.14(A)(4).
 {¶ 58} R.C. 2929.13(B)(1) provides that in sentencing an offender for a felony of the fourth degree, the sentencing court shall determine whether any of the following circumstances apply:
 {¶ 59} "(a) In committing the offense, the offender caused physical harm to a person.
 {¶ 60} "(b) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person with a deadly weapon.
 {¶ 61} "(c) In committing the offense, the offender attempted to cause or made an actual threat of physical harm to a person, and the offender previously was convicted of an offense that caused physical harm to a person.
 {¶ 62} "(d) The offender held a public office or position of trust and the offense related to that office or position; * * *.
 {¶ 63} "(e) The offender committed the offense for hire or as part of an organized criminal activity.
 {¶ 64} "(f) The offense is a sex offense * * *.
 {¶ 65} "(g) The offender previously served a prison term.
 {¶ 66} "(h) The offender committed the offense while under a community control sanction, while on probation, or while released from custody on a bond or personal recognizance.
 {¶ 67} "(i) The offender committed the offense while in possession of a firearm."
 {¶ 68} If the court finds that one of the above circumstances applies, after considering the factors set out in R.C. 2929.12, in addition to finding that a prison term is consistent with the purposes and principles of sentencing in R.C. 2929.11 and that the offender is not amenable to a community control sanction, then the court must impose a prison term upon the offender. R.C. 2929.13(B)(2)(a).
 {¶ 69} If the court does not make one of the R.C. 2929.13(B)(1) findings and, after considering the factors set out in R.C. 2929.12, finds that a community control sanction is consistent with the purposes and principles of R.C. 2929.11, then the court must impose a community control sanction. R.C. 2929.13(B)(2)(b).
 {¶ 70} The case sub judice does not fall into either of the above mandatory sentencing scenarios. The trial court did not find that any of the R.C. 2929.13(B)(1) factors applied, nor did it find that community control sanctions were consistent with the R.C. 2929.11 purposes and principles. Thus, it was up to the trial court's broad discretion to determine whether to impose a prison term on appellant for his fourth degree felony.
 {¶ 71} However, the trial court was required to state its findings and reasons for imposing a prison term on a fourth or fifth degree felony under R.C. 2929.19(B)(2)(a). R.C. 2929.19(B)(2)(a) provides that when the court imposes a prison term for a fourth or fifth degree felony, it must make a finding that gives its reasons for imposing a prison term, based upon the overriding purposes and principles of sentencing set forth in R.C. 2929.11 and any R.C. 2929.13(B)(1) factors that it finds apply. Thus, we must determine whether the trial court made appropriate findings to sentence appellant to a prison term for his arson conviction.
 {¶ 72} According to R.C. 2929.11(A), the overriding purposes and principles of sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve these purposes, the court must consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution. R.C. 2929.11(A). In addition to achieving the purposes of sentencing, the court should be careful that the sentence is commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim and is consistent with sentences imposed for similar crimes. R.C. 2929.11(B).
 {¶ 73} In the present case, the court's judgment entry noted that it considered both R.C. 2929.11 and R.C. 2929.12. In its entry, the court found that both fires had the extreme potential of causing serious physical harm to people and property; although, at the sentencing hearing, the court found that only one of the fires had this potential. The court observed that appellant had a substantial prior misdemeanor history and a prior felony conviction (arising from the dangerous ordnance charge related to this case) which was "of great importance" in rendering its sentence. Finally, the court determined that appellant's sentence had to be greater than the minimum to protect the public and to not demean the seriousness of the offense. These findings both fall under the R.C. 2929.11 purposes and principles of sentencing, which R.C.2929.19(B)(2)(a) states should be the basis for court's reasons in support of a prison term. Accordingly, the trial court's findings provide sufficient reasons for imposing a prison sentence for appellant's arson conviction (which is to run concurrently with appellant's aggravated arson sentence) rather than a community control sanction in compliance with R.C. 2929.19(B)(2)(a) and for deviating from the minimum sentence under R.C. 2929.14(B).
 {¶ 74} Thus, appellant's fifth assignment of error is without merit.
 {¶ 75} Appellant's sixth assignment of states:
 {¶ 76} "THE COURT ABUSED ITS DISCRETION IN SENTENCING THE DEFENDANT-APPELLANT TO PRISON TERMS GREATER THAN THE STATUTORY MINIMUM SENTENCES PURSUANT TO 2929.14."
 {¶ 77} Appellant alleges that the trial court failed to comply with R.C. 2929.14. He argues that although the court made the necessary finding on the record, there was no basis for this finding since appellant had no history of arson convictions.
 {¶ 78} In addition to being convicted of arson, appellant was convicted of aggravated arson. In appellant's case, aggravated arson is a felony of the second degree. R.C. 2909.02(B)(3). The possible prison sentences for a second-degree felony are two, three, four, five, six, seven, or eight years. R.C. 2929.14(A)(2).
 {¶ 79} R.C. 2929.14(B) provides, in pertinent part:
 {¶ 80} "[I]f the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense pursuant to division (A) of this section, unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others."
 {¶ 81} Since appellant had not previously served a prison term, he was entitled to the presumption of the shortest prison term absent one of the specific findings above. As stated previously, the court made the requisite finding on the record that sentence greater than the minimum was required to adequately protect the public and to not demean the seriousness of the offense. (Sentencing Tr. 7).
 {¶ 82} While appellant concedes that the court made the appropriate finding, he complains that the finding was not supported by his criminal history since he had no prior arson convictions. Nothing in the sentencing guidelines supports appellant's argument. Nowhere does R.C. 2929.14 provide that in order to sentence a defendant to a greater-than-minimum sentence the court must first find that the defendant previously committed a similar offense. Thus, the court made the necessary finding to support the greater-than-minimum sentence it imposed on appellant.
 {¶ 82} Accordingly, appellant's sixth assignment of error is without merit.
 {¶ 83} For the reasons stated above, the decision of the trial court is hereby affirmed.
Vukovich, J., concurs.
DeGenaro, J., concurs.
[1] Appellant proceeded to trial on the unlawful possession of a dangerous ordnance charge and was convicted. He appealed his conviction, which this court affirmed in State v. Simpson, 7th Dist. No. 01-CO-13, 2002-Ohio-1565. The possession of a controlled substance charge never progressed to trial because the court ruled to suppress the drugs.