JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Defendant Richard Segines appeals from his convictions for murder and aggravated robbery. For the reasons set forth below, we affirm.
 {¶ 2} On October 24, 2006, defendant and co-defendants Sharon Dockery and Harry Briscoe were indicted on two counts of aggravated murder and two counts of aggravated robbery, in connection with an alleged attack upon Ali Th Abu Atiq. The charges against defendant also contained one and three year firearm specifications, felony murder specifications, repeat violent offender specifications and a notice of a prior conviction. The felony murder specifications were later dismissed by the state.
 {¶ 3} Sharon Dockery subsequently entered guilty pleas to involuntary manslaughter and robbery. Defendant pled not guilty and also filed a motion to suppress various oral statements, and also moved to be tried separately from Briscoe. The trial court denied both motions and the matter proceeded to a jury trial on May 7, 2007.
 {¶ 4} The state's evidence established that on September 13, 2006, Briscoe told his girlfriend Dockery to get dressed because they had to go somewhere. They drove Dockery's Ford Escort and picked up defendant. Briscoe then instructed Dockery to drive to the Banbury Apartments. While en route, defendant spoke to someone on his cell phone about purchasing tennis shoes. Once the three arrived at the apartment complex, Briscoe ordered her to park the vehicle in the lot and wait *Page 4 
there for the two men to return. Dockery followed Briscoe's directions.
 {¶ 5} Damon Leggett, a maintenance worker at the apartment complex, testified that two men, one of whom he identified as Briscoe, approached Ali Th Abu Atiq who was selling clothing apparel from his van. One man was in a striped shirt and the other was in black. Approximately five minutes later, Leggett received a call that the man near the van had been shot. He ran to the area and observed Ali Th Abu Atiq who was struggling to breathe and died a short time later from the wound which perforated his lung and caused him to bleed to death. He also sustained traumatic injuries to his head, left arm, and leg.
 {¶ 6} Defendant and Briscoe confiscated clothing, a set of keys, the victim's cell phone, and over $200 in cash, and then fled to Dockery's vehicle, pounded on the window, and demanded that she unlock the doors. Dockery noticed defendant was holding a gun, some white t-shirts, and blue jeans. Briscoe was carrying a cell phone that he did not own. According to Dockery, Briscoe told her that defendant fought with the man and Briscoe then jumped in and hit him in the head and the gun discharged.
 {¶ 7} Banbury resident Gaylon Clark observed a man being shot and observed two assailants. He then noticed a woman in a gray Ford Escort pulling out. He attempted to warn her to stay out of the area then noticed the two assailants get into her vehicle.
 {¶ 8} Briscoe ordered Dockery to drive away quickly. She complied with his *Page 5 
demand and the three drove to various places. During the drive, Dockery testified that defendant told Briscoe that he thought Briscoe had killed Ali Th Abu Atiq. Briscoe denied doing so but stated that he had obtained about $10 and a cell phone. Defendant stated he had $200 and a set of keys, then counted the money and divided it between himself and Briscoe. The men threw the keys and cell phone out the window and, Dockery believed, defendant changed out of the shirt he was wearing and put on a shirt obtained from the victim's van.
 {¶ 9} Dockery noticed a police car behind her so she parked the vehicle in a driveway of a home in Cleveland and she and Briscoe pretended to ask for directions.
 {¶ 10} Garfield Heights Police Officer Thomas Murphy testified that, following the shooting, he was on the lookout for a gray Ford Escort and later that afternoon observed such a vehicle in Garfield Heights and noticed the occupants, one woman and two men, handling clothing. He ran the plates and learned that it belonged to Dockery. Officer Murphy followed the vehicle but could not stop it. A shirt was recovered near the home where the vehicle was briefly parked. This shirt had a DNA profile consistent with defendant's DNA profile. Murphy later found Dockery's vehicle abandoned on Telfair Road in Cleveland. Fingerprints recovered from the Escort were linked to defendant and Briscoe.
 {¶ 11} Spencer Sherels testified that two men, whom he later identified as defendant and Briscoe, and a woman identified as Dockery, came to his house on *Page 6 
the day of the shooting and asked how to get to Northfield. Sherels saw the handle of a gun inside the car and asked them to leave.
 {¶ 12} Dockery and defendant then left on foot while Briscoe drove off in the vehicle. Defendant contacted a friend to take them to defendant's apartment. Dockery stayed at the apartment for a short time then stayed with Briscoe at the home of his cousin Toby. The next evening, Briscoe contacted Melvin Barnes.
 {¶ 13} Barnes testified that, on September 16, 2006, Briscoe called him for a ride. Barnes went to Kinsman Road in Cleveland to meet Briscoe who was with Dockery, Amar Simmons, and Simmon's girlfriend, Takeva. Barnes drove Briscoe to a Motel 6 in Macedonia and rented a room for him. Dockery followed in a vehicle behind.
 {¶ 14} Dockery and Briscoe stayed only one night at the Motel 6. The next day, Tanika Dixon, a friend of Dockery, picked Dockery and Briscoe up and drove them to Alliance, Ohio. Dockery and Briscoe slept at the house of one of Tanika's friends for one night and Tanika's sister, Tasha's house, the following evening. While Dockery and Briscoe were at Tasha's, the police arrived and arrested them.
 {¶ 15} During its investigation, Warrensville Heights Police learned that the keys were missing from Ali Th Abu Atiq's van and there was no money in his possession. A shell casing was recovered from beneath the van and a bullet was found within the van and there were latent fingerprints on the outside of the van. One of the prints was matched to Briscoe. *Page 7 
 {¶ 16} The police subsequently obtained information that Dockery was hiding at a home in Alliance. She and Briscoe were later arrested. Defendant was arrested at his girlfriend's house. Officers later determined that the weapon associated with the shooting was located on Telfair Road in Cleveland. They determined that the casing recovered beneath the van came from this weapon. Emma Anderson testified for the defense and stated that, on the morning of September 13, 2006, she heard Briscoe, her neighbor, arguing with a woman she later learned was Dockery.
 {¶ 17} On May 15, 2007, the jury found defendant guilty of one count of the lesser offense of murder, both counts of aggravated robbery, murder, and the one-year and three-year firearm specifications. The trial court sentenced him to a term of imprisonment of fifteen years to life, plus three years, for the weapon on the murder charge and a consecutive term of ten years for the aggravated robbery convictions. Defendant now appeals and submits seven assignments of error for our review.
 {¶ 18} The first assignment of error states:
 {¶ 19} "There was insufficient evidence to convict appellant."
 {¶ 20} When reviewing a challenge to the sufficiency of the evidence, an appellate court must view the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found the essential elements of the crime, proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, at paragraph two of the syllabus, citing Jackson v. Virginia (1979),443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Thus, a reviewing court will *Page 8 
not overturn a conviction for insufficiency of "the evidence unless we find that reasonable minds could not reach the conclusion reached by the trier of fact." State v. Treesh, 90 Ohio St.3d 460, 484, 2001-Ohio-4,739 N.E.2d 749.
 {¶ 21} The essential elements of aggravated robbery are defined in R.C. 2911.01 which states:
 {¶ 22} "(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
 {¶ 23} "(1) Have a deadly weapon * * *
 {¶ 24} "(3) Inflict, or attempt to inflict, serious physical harm on another."
 {¶ 25} The essential elements of murder are to purposely cause the death of another. R.C. 2903.02(A).
 {¶ 26} R.C. 2923.03(A)(2) defines "complicity" as:
 {¶ 27} "No person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense."
 {¶ 28} To "aid and abet" is "`[t]o assist or facilitate the commission of a crime, or to promote its accomplishment.'" State v. Johnson (2001),93 Ohio St.3d 240, 243, 2001-Ohio-1336, 754 N.E.2d 796, quoting Black's Law Dictionary (7th Ed.1999) 69. A conviction for complicity by aiding and abetting is shown by evidence demonstrating that a defendant "supported, assisted, encouraged, cooperated with, *Page 9 
advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal." Id. at the syllabus.
 {¶ 29} In this matter, the state's evidence demonstrated that Briscoe told Dockery that they had to go somewhere, then instructed her to pick up defendant. Dockery was then instructed to drive to the Banbury Apartments. En route, defendant made a phone call to someone and ordered seven pairs of tennis shoes. The men exited the vehicle and met up with the victim who was known to sell clothing from his van. A few minutes later, the victim sustained traumatic injuries to his head, arm and leg, and a mortal gunshot wound. The men fled to Dockery's vehicle with clothing, keys, and the victim's phone and left the scene. At this time, defendant had Briscoe's weapon. Briscoe told Dockery that defendant fought with the victim. They eluded police by feigning that they belonged at Sherel's home, but were later captured. A shirt was found in this area with DNA, which is consistent with defendant's DNA profile, and defendant's fingerprints were found in Dockery's car. From all of the foregoing, we conclude that a rational trier of fact could have found the essential elements of the offenses proven beyond a reasonable doubt.
 {¶ 30} As to aggravated robbery, the evidence demonstrated that defendant arranged to meet the victim, that he fought with the victim and that the victim suffered traumatic injuries and a mortal gunshot wound before the men fled with his money and property. As to murder, the evidence demonstrated that defendant incited and planned the offense by arranging to meet with the victim, and that, *Page 10 
immediately after the shooting, defendant and Briscoe fled to Dockery's car and defendant had Briscoe's weapon. Briscoe repeatedly told defendant that he had killed the victim. The convictions are supported by sufficient evidence.
 {¶ 31} This assignment of error is without merit.
 {¶ 32} Defendant's second assignment of error states:
 {¶ 33} "The conviction of appellant is against the manifest weight of the evidence."
 {¶ 34} In State v. Thompkins, 78 Ohio St.3d 380, 388, 1997-Ohio-52,678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 35} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' Black's [Law Dictionary (6 Ed. 1990)], at 1594."
 {¶ 36} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citingTibbs v. Florida (1982), 457 U.S. 31, 45, 102 S.Ct. 2211, *Page 11 72 L.Ed.2d 652. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether, in resolving conflicts in the evidence, the court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 37} In this matter, the evidence demonstrated that Briscoe and Dockery picked up defendant and Briscoe instructed the woman to drive to the Banbury Apartments. At this time, defendant made a phone call to someone and ordered seven pairs of tennis shoes. The men then spoke with the victim who had large boxes of clothing in his van. A few minutes later, the victim sustained traumatic injuries to his head, arm and leg, and a mortal gunshot wound. The men fled with clothing, keys, and the victim's phone and defendant had Briscoe's weapon. Briscoe told Dockery that defendant fought with the victim. The group stopped briefly at Sherel's home in an attempt to evade police, but were later captured. A shirt was found in this area with DNA which is consistent with defendant's DNA profile and defendant's fingerprints were found in Dockery's car. From all of the foregoing, we cannot say that the jury lost its way in convicting defendant of the offenses. The convictions for aggravated robbery and murder are not against the manifest weight of the evidence.
 {¶ 38} This assignment of error is without merit. *Page 12 
 {¶ 39} Defendant's third assignment of error states:
 {¶ 40} "The trial court erred in denying defense counsel's motion to suppress the identification testimony and photo array."
 {¶ 41} When a witness has been confronted with a suspect before trial, due process requires a court to suppress an identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt and the identification was unreliable under all the circumstances. State v. Waddy (1992), 63 Ohio St.3d 424, 438,588 N.E.2d 819, citing Manson v. Brathwaite (1977), 432 U.S. 98, 116,97 S.Ct. 2243, 2254, 53 L.Ed.2d 140, 155, and Neil v. Biggers (1972),409 U.S. 188, 196-198, 93 S.Ct. 375, 381-382, 34 L.Ed.2d 401, 410-411.
 {¶ 42} The defendant bears the initial burden of establishing that the photographic identification procedure was unnecessarily suggestive. If the defendant meets this burden, the court must consider whether the procedure was so unduly suggestive as to give rise to irreparable mistaken identification. State v. Wills (1997), 120 Ohio App.3d 320,324-325, 697 N.E.2d 1072, citing Manson v. Brathwaite, supra.
 {¶ 43} The court must determine whether the photographic identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."Simmons v. United States (1968) 390 U.S. 377, 384, 19 L.Ed.2d 1247,88 S.Ct. 967.
 {¶ 44} However, no due process violation will be found where an identification *Page 13 
is instead the result of observations at the time of the crime and does not stem from an impermissibly suggestive confrontation. Coleman v.Alabama (1970), 399 U.S. 1, 5-6, 90 S.Ct. 1999, 2001, 26 L.Ed.2d 387,394.
 {¶ 45} A court must consider the following factors with regard to potential misidentification: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation * * *." Neil v.Biggers, supra. The court must review these factors under the totality of the circumstances. Id. Even if the "identification procedure may have contained notable flaws, this factor does not, per se, preclude the admissibility of the identification." State v. Merrill (1984),22 Ohio App.3d 119, 121, 489 N.E.2d 1057; State v. Moody (1978)55 Ohio St.2d 64, 67, 377 N.E.2d 1008.
 {¶ 46} In this matter, defendant asserts that the identifications made by Damon Leggett, Alias Perkins, and Spencer Sherels were unreliable and based upon an overly suggestive photo array. We note that Leggett did not identify defendant and only identified Briscoe. The motion to suppress eyewitness identification was accordingly withdrawn by defendant's trial counsel. We reject this claim as to Leggett.
 {¶ 47} Perkins only identified Briscoe. Defendant, therefore, does not have standing to challenge the photo array as to Briscoe. State v.Walker (June 5, 1987), *Page 14 
Wood App. No. WD-86-32.
 {¶ 48} Sherels observed the assailants when they arrived at his home. He spoke to them and observed them in his yard before ultimately asking them to leave. He testified that he got a good look at them and the event was a "red flag" because of their conduct and the nearby presence of police. He provided detailed descriptions of them and what they were wearing to police. We therefore agree that identification was instead the result of Sherels' observations at the time of the crime. Additionally, there is nothing suggestive about the photo array which contained defendant's picture.
 {¶ 49} This assignment of error is without merit.
 {¶ 50} Defendant's fourth assignment of error states:
 {¶ 51} "The trial court abused it discretion when it denied defendant's motion to separate trials and/or relief from joinder."
 {¶ 52} Crim.R. 8(B) governs joinder of defendants and provides as follows:
 {¶ 53} "(B) Joinder of defendants. Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count."
 {¶ 54} Similarly, R.C. 2945.13 provides that, when two or more defendants *Page 15 
have been jointly indicted for a felony, the defendants should be jointly tried unless, on application of one of the defendants, the court orders that they be tried separately.
 {¶ 55} Crim.R. 14 permits the trial court to grant a severance of trials when it appears that a joint trial would prejudice either the state or a defendant.
 {¶ 56} An appellate court reviews a trial court's decision on joinder for abuse of discretion. State v. Scott, Mahoning App. No. 05-MA-215,2007-Ohio-6258. If a defendant claims the court erred in refusing to allow separate trials of multiple charges, he has the burden of affirmatively showing that his rights were prejudiced. State v.Torres (1981), 66 Ohio St.2d 340, 343, 421 N.E.2d 1288. "When a defendant claims that he was prejudiced by the joinder of multiple offenses, a court must determine (1) whether evidence of the other crimes would be admissible even if the counts were severed, and (2) if not, whether the evidence of each crime is simple and distinct."State v. Schaim, 65 Ohio St.3d 51, 59, 1992-Ohio-31, 600 N.E.2d 661.
 {¶ 57} In this matter, the record indicates that defendant filed the motion for a separate trial after the jury had already been impaneled and the state had begun the presentation of its evidence. The motion was not timely pursuant to Crim.R. 12(D). State v. Palmer, Jefferson App. No. 04-JE-41, 2006-Ohio-749. In addition, since the state maintained that all three original defendants acted in concert, and aided and abetted one another, the evidence of Briscoe's conduct would be admissible even if the counts were severed, and the evidence of each crime was simple and distinct. *Page 16 
We find no abuse of discretion.
 {¶ 58} This claim lacks merit.
 {¶ 59} This assignment of error is overruled.
 {¶ 60} Defendant's fifth assignment of error states:
 {¶ 61} "The trial court abused its discretion in denying defendants' motions for mistrial."
 {¶ 62} Trial courts enjoy broad discretion in ruling on motions for mistrial. State v. Iacona, 93 Ohio St.3d 83, 100, 2001-Ohio-1292,752 N.E.2d 937; State v. Sage (1987), 31 Ohio St.3d 173, 182,510 N.E.2d 343. Absent an abuse of discretion, a reviewing court will not reverse a trial court's decision regarding a motion for a mistrial. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court acted in an unreasonable, arbitrary, or unconscionable manner. See, e.g., State v. Moreland (1990),50 Ohio St.3d 58, 61, 552 N.E.2d 894; State v. Adams (1980), 62 Ohio St.2d 151,157, 404 N.E.2d 144.
 {¶ 63} In examining whether a mistrial is appropriate, a court should use a balancing test under "which the defendant's right to have the charges decided by a particular tribunal is weighed against society's interest in the efficient dispatch of justice." Id.; see, also,United States v. Scott (1978), 437 U.S. 82, 98 S.Ct. 2187,57 L.Ed.2d 65. "Mistrials need be declared only when the ends of justice so require and a fair trial is no longer possible." State v. Franklin (1991),62 Ohio St.3d 118, 127, 580 N.E.2d 1, citing Illinois v. Somerville (1973),410 U.S. 458, 462-463, *Page 17 93 S.Ct. 1066, 35 L.Ed.2d 425.
 {¶ 64} Here, defendant asserts that the trial court erred in denying his requests for a mistrial which were premised upon the state's failure to provide the phone records of the victim. Because they were not provided, the defense theorizes that they were exculpatory. Defendant also asserts that the trial court should have granted a mistrial when it excused Juror No. 4 because, he asserts, there was little justification and it was done before the entire panel. He also complains that a mistrial was warranted because one of the arresting officers testified that defendant stated that he met Briscoe in prison and the officers were observed in a discussion outside the courtroom.
 {¶ 65} As to the issue of the cell phone records, we note that defendant's argument presupposes that the calls were made to the cell phone rather than a house phone or other line. The evidence pertaining to the cell phone demonstrated that no phone was recovered from the victim but the officers learned that he had been using his wife's phone. The jury heard testimony that the victim received 20 to 30 calls but the officers did not contact these people and did not keep a list or report of these individuals. From this state of the record we cannot say that the state withheld exculpatory evidence as the identity of the callers remains to this date unknown. We find no abuse of discretion in connection with the trial court's denial of a mistrial on this claim.
 {¶ 66} With regard to the trial court's decision regarding Juror No. 4, we note *Page 18 
that Crim.R. 24(F)(1) states that alternate jurors shall replace jurors who, prior to the time the jury retires to consider its verdict, become or are found to be unable or disqualified to perform their duties. It is within the trial court's discretion to decide when to replace a seated juror with an alternate juror. State v. Bryan, 101 Ohio St. 3d 272,2004-Ohio-971 at _80-82, 804 N.E.2d 433. We find no abuse of discretion herein. An alternate juror was available, and this Juror was observed laughing inappropriately and exhibiting odd behaviors and was not forthcoming as to her true address. In addition, the circumstances surrounding her fiance's appearance in the courtroom were not clearly explained and the event was unusual but not so disruptive as to warrant a mistrial
 {¶ 67} As to the reference to defendant's time in prison, we find no abuse of discretion as this was a single isolated remark and the trial court immediately provided a curative instruction.
 {¶ 68} With regard to the officers' discussion in the hall, the prosecuting attorney indicated that he merely informed the officers not to mention anyone's prior record and there was no evidence to the contrary. We find no abuse of discretion. State v. Nields,93 Ohio St.3d 6, 2001-Ohio-1291, 752 N.E.2d 859.
 {¶ 69} This assignment of error is overruled.
 {¶ 70} Defendant's sixth assignment of error states:
 {¶ 71} "The trial court abused its discretion in failing to provide lesser included offense charge and in deleting portions of agreed upon jury instructions." *Page 19 
 {¶ 72} Even where an offense may be statutorily defined as a lesser included offense of another, a charge on the lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser included offense. State v. Thomas (1988), 40 Ohio St.3d 213, 216,533 N.E.2d 286, certiorari denied (1989), 493 U.S. 826, 110 S.Ct. 89,107 L.Ed.2d 54; State v. Kidder (1987), 32 Ohio St.3d 279,513 N.E.2d 311.
 {¶ 73} Defendant asserts that the trial court erred in failing to provide instructions as to the lesser offenses of involuntary manslaughter and reckless homicide. The evidence indicated that defendant and Briscoe brought a loaded gun to the meeting with the victim and that they robbed him. The evidence also indicated that the victim suffered traumatic injuries and was shot after he began to fight with his two assailants. The claim that defendant did not intend to shoot the victim under these circumstances is not reasonable. SeeState v. Thomas, supra.
 {¶ 74} Defendant also claims that the trial court erred in failing to give the Telfaire instruction[1] regarding eyewitness identification.
 {¶ 75} In State v. Guster (1981), 66 Ohio St. 2d 266, 270,421 N.E.2d 157, the supreme court approved the substance of the Telfaire
instruction but did not mandate the use of a special instruction regarding identification. Rather, the court *Page 20 
determined that the decision to give such an instruction was within the sound discretion of the trial court. Id., at syllabus; accord State v.Caldwell (1984), 19 Ohio App.3d 104, 107, 483 N.E.2d 187.
 {¶ 76} In this matter, the trial court did not give a special instruction regarding identification, but it did instruct the jury that it was to consider "the reasonableness or unreasonableness of [the witness's] testimony; consider the opportunity the person had to see, or hear or know the truth of the facts to which they've testified to * * *."
 {¶ 77} Viewed in its totality, the court's charge informed the jury of its duty to carefully weigh the reliability of identification testimony and to determine identity beyond a reasonable doubt. We therefore find no abuse of discretion in this matter.
 {¶ 78} This assignment of error is overruled.
 {¶ 79} Defendant's seventh assignment of error states:
 {¶ 80} "Defendant was denied the effective assistance of counsel."
 {¶ 81} This court reviews a claim of ineffective assistance of counsel under the two-part test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L. Ed. 2d 674. UnderStrickland, a reviewing court will not deem counsel's performance ineffective unless a defendant can show his lawyer's performance fell below an objective standard of reasonable representation and that prejudice arose from the lawyer's deficient performance. State v.Bradley (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus. To show prejudice, a defendant must prove that, but for his lawyer's errors, a reasonable probability exists that the *Page 21 
result of the proceedings would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. State v. Sallie, 81 Ohio St.3d 673, 674,1998-Ohio-343, 693 N.E.2d 267. "Failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel, nor could such a failure be prejudicial." State v. Henderson, Cuyahoga App. No. 88185,2007-Ohio-2372.
 {¶ 82} In this assigned error, defendant claims that his trial counsel rendered ineffective assistance when he failed to do the following:1) failing to properly seek separate trials; 2) allowing the trial to proceed when he was in a prison uniform.
 {¶ 83} In so far as we have determined that the evidence of Briscoe's conduct would be admissible even if the counts were severed, the evidence of each crime was simple and distinct and the matters were properly tried together, we find no error as to severance. Absent an error, the claim of ineffective assistance must fail. State v.Henderson, (1988), 39 Ohio St.3d 24, 33, 528 N.E.2d 1237.
 {¶ 84} As to defendant's clothing, we note that this issue is unclear in the record as there are references to defendant being in street clothing. In any event, a defendant may elect, "as a matter of trial strategy, to stand trial in such attire." See State v. Jackson, Lucas App. No. L-07-1184, 2008-Ohio-1563; citing Estelle v. Williams (1976),425 U.S. 501, 507, 96 S.Ct. 1691, 48 L.Ed.2d 126.
 {¶ 85} This claim is without merit.
 Judgment affirmed. *Page 22 
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
SEAN C. GALLAGHER, P.J., and MARY EILEEN KILBANE, J., CONCUR.
[1] This instruction was set forth in United States v. Telfaire (D.C. 1972), 152 U.S. App. D.C. 146, 469 F.2d 552. *Page 1