[Cite as *State v. Oester*, 2013-Ohio-2676.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. William B. Hoffman, P.J. |
|     Plaintiff-Appellee | Hon. Sheila G. Farmer, J.<br>Hon. John W. Wise, J. |
| -vs- | Case No. 2012CA00118 |
| AARON MICHAEL OESTER | |
|     Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2011CR0989


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 24, 2013


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant


JOHN D. FERRERO,                      KRISTINE W. BEARD
PROSECUTING ATTORNEY,                 4450 Belden Village St. NW
STARK COUNTY, OHIO                    Suite 703
                                      Canton, Ohio 44718
By: RENEE M. WATSON
Assistant Prosecuting Attorney
Appellate Section
110 Central Plaza, S. - Suite 510
Canton, Ohio 44702-1413

*Hoffman, P.J.*

{¶1}   Defendant-appellant Aaron Michael Oester appeals his conviction and sentence entered by the Stark County Court of Common Pleas.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

{¶2}   On July 1, 2011, Shannon Crolley and her mother, Doris Hoagland, drove to Canton, Ohio to meet Appellant Michael Oester and two other men at the Kentucky Fried Chicken location on Tuscarawas Avenue in Canton.  Crolley knew Appellant from her previous experience in a drug rehabilitation facility, and had previously contacted him several times via text message.

{¶3}   On that date, Appellant put Crolley in contact with Joseph Berry, otherwise known as "J" or "Cuz," to purchase 2 ounces of marijuana for $200.00.  However, after leaving Crolley and Hoagland, "J" took the $200.00 and did not return with the marijuana.

{¶4}   Crolley and Hoagland drove back to the KFC to find Appellant, telling him "J" had stolen the money.  Appellant got in the car with the women and took them to "J's" house.  They travelled around Canton looking for "J", never finding him.  They eventually dropped Appellant off, and started to return home.

{¶5}   On the way home, Crolley received a telephone call from Appellant telling her he had retrieved her money.  He gave her directions where to meet him.   The women turned around, and were given directions to a remote area in Southeast Canton where they parked and waited.  As they were waiting, Crolley witnessed Appellant appear from an area of tall grass, walk around the front of the vehicle, and pass her

vehicle holding a gun. He approached the vehicle, and proceeded to shoot Crolley in the back of the head. He walked around the vehicle and shot Hoagland in the neck and through the cheek.

{¶6} After the shooting, Hoagland climbed into the driver's seat of the vehicle, and drove to a nearby business to get help. Both women were conscious, talking and able to provide the identification of the shooter. The business called 911, and Hoagland and Crolley were taken to a nearby hospital. Crolley was later life-flighted to Cleveland Metro Hospital.

{¶7} On July 2, 2011, members of the Canton Police Department showed Hoagland a photo array. Hoagland identified Appellant as the shooter. Three weeks later, Crolley was shown a photo array and identified Appellant as the shooter.

{¶8} On August 16, 2011, the Stark County Grand Jury indicted Appellant on two counts of attempted murder, in violation of R.C. 2903.02(A), 2923.02(A), first degree felonies; two counts of felonious assault, in violation of R.C. 2903.11, second degree felonies; and one count of having a weapon while under disability, in violation of R.C. 2323.13(A)(2). The attempted murder and felonious assault charges carried firearm specifications, pursuant to R.C. 2941.145, and repeat violent offender specifications, pursuant to R.C. 2941.149.

{¶9} On November 11, 2011, the trial court conducted a hearing on Appellant's motion to suppress the identification of Appellant from a photo array presented by the Canton Police Department. The trial court overruled Appellant's motion to suppress.

{¶10} On November 20, 2011, Appellant moved the trial court to appoint a neuropsychology expert. Specifically, Appellant sought an expert to determine the

brain's response to trauma and the reliability of Crolley and Hoagland's identification of Appellant as the shooter. Via Judgment Entry of November 16, 2011, the trial court denied the motion.

{¶11} On February 28, 2012, Appellant filed a notice of alibi contending he was with Joshua Kennedy at the time the shootings took place. A videotaped deposition of Kennedy was taken via Skype as Kennedy is currently serving with the United States Army in Afghanistan.

{¶12} Following two declared mistrials by the trial court, the matter proceeded to trial for a third time on April 24, 2012. Appellant waived his right to a jury trial on the charge of having weapons under disability and on the firearm and repeat violent offender specifications. The other charges were then tried to the jury. On April 27, 2012, Appellant was convicted on all counts and specifications.

{¶13} On April 30, 2012, following a sentencing hearing, the trial court merged the felonious assault and attempted murder charges. The court then sentenced Appellant to ten years for each count of attempted murder, two three-year sentences for each firearm specification, two ten-year sentences for each repeat violent offender specification and thirty-six months for having a weapon under disability, all to be served consecutively for a total term of forty-nine years in prison.

{¶14} Appellant now appeals, assigning as error:

{¶15} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT APPELLANT'S REQUEST FOR FUNDS TO HIRE A NEUROPSYCHOLOGY EXPERT TO AID IN APPELLANT'S DEFENSE.

**{¶16}** "II. THE COURT'S FAILURE TO APPLY THE EXCLUSIONARY RULE AND SUPPRESS IDENTIFICATION TESTIMONY WHICH WAS BASED UPON SUGGESTIVE, UNRELIABLE POLICE IDENTIFICATION PROCEDURES PRESENTED A SUBSTANTIAL LIKELIHOOD OF MISIDENTIFICATION AND THEREBY VIOLATED APPELLANT'S DUE PROCESS RIGHTS.

**{¶17}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE STATE TO ADMIT THE TESTIMONY OF JOSHUA KENNEDY BY WAY OF VIDEO TAPED DEPOSITION WHEN THE TESTIMONY HAD NOT BEEN SUBJECT TO CROSS-EXAMINATION WITH NEWLY DISCOVERED EVIDENCE.

**{¶18}** "IV. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO PERMIT THE APPELLANT TO INTRODUCE AN ALIBI DEFENSE.

**{¶19}** "V. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION BY IMPOSING NON-MINIMUM, MAXIMUM CONSECUTIVE SENTENCES.

**{¶20}** "VI. APPELLANT'S CONVICTIONS FOR ATTEMPTED MURDER, FIREARM SPECIFICATIONS, REPEAT VIOLENT OFFENDER SPECIFICATIONS AND HAVING A WEAPON UNDER DISABILITY ARE AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

**{¶21}** "VII. CUMMULATIVE [SIC] ERRORS COMMITTED DURING THE TRIAL DEPRIVED THE APPELLANT OF A FAIR TRIAL AND REQUIRE A REVERSAL OF APPELLANT'S CONVICTION AND SENTENCE.

I.

**{¶22}** In the first assignment of error, Appellant maintains the trial court erred in denying his request for funds to hire a neuropsychology expert to aid in his defense. Specifically, Appellant moved the trial court for funds to hire an expert to advise counsel about the brain's response to trauma and the reliability of the identification of a witness after having suffered a serious head or brain injury.

**{¶23}** Appellant cites statutory law relative to the appointment of an expert for a capital defendant. Though this is not a capital offense case, Appellant argues courts have recognized non-capital defendants may require expert assistance. This Court has held an indigent defendant bears the burden of establishing the reasonable necessity for such assistance. *State v. Ford* (April 11, 2012), Ashland App. No. 01COA1438.

**{¶24}** In *Ford,* this Court held,

**{¶25}** "The decision whether or not to appoint an expert is within the discretion of the trial court. Therefore, we will not reverse the trial court's decision absent an abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Due process by the State, as guaranteed by the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution requires an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of sound discretion, the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and; (2) that denial of the requested expert assistance would result in an unfair trial. 'Traditionally when dealing

with criminal proceedings, there has been no authority for mandating the appointment of an expert witness for an indigent defendant in a non-capital case.' An indigent defendant who seeks state funded assistance bears the burden of establishing a reasonable necessity for such assistance. At a minimum, the indigent defendant must present the trial judge with sufficient facts with which the court can base a decision. Undeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate. We agree with the trial court. Appellant made no particularize showing the requested expert would aid in his defense and that denial of the request would result in an unfair trial. "

{¶26} There is no indication either Crolley or Hoagland suffered mental impairment or a lapse of memory as a result of the shooting. Both victims were able to immediately identify Appellant as the shooter. Additionally, Appellant had adequate means to subpoena the treating physicians regarding the effects of the shooting on the particular victims' identification of Appellant. We find Appellant has not demonstrated a particularized need for the expert testimony, and the trial court did not abuse its discretion in denying Appellant's request.

{¶27} The first assignment of error is overruled.

II.

{¶28} In the second assignment of error, Appellant argues the trial court erred in denying his motion to suppress the identification testimony as the identification procedure presented a substantial likelihood of misidentification and was unduly suggestive and unreliable.

**{¶29}** There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning,* 1 Ohio St.3d 19 (1982); *State v. Klein,* 73 Ohio App.3d 485 (4th Dist.1991); *State v. Guysinger,* 86 Ohio App.3d 592 (4th Dist.1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams,* 86 Ohio App.3d 37 (4th Dist.1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry,* 95 Ohio App.3d 93 (8th Dist.1994); *State v. Claytor,* 85 Ohio App.3d 623 (4th Dist.1993); *Guysinger.* As the United States Supreme Court held in *Ornelas v. U.S.,* 116 S.Ct. 1657, 1663 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

**{¶30}** Appellant argues both victims suffered from acute head injuries at the time of the out-of-court photo array identification procedures, interfering with their competency and ability to comprehend the nature of the procedures. Based upon the totality of the circumstances, Appellant asserts the procedure was unduly suggestive and created a substantial risk of misidentification during the investigation and trial.

{¶31} When a witness is shown a photograph of a suspect before trial, due process requires a court to suppress the photo identification of the suspect if the photo array was unnecessarily suggestive of the suspect's guilt and the identification was not reliable. *State v. Waddy,* 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992), superseded by constitutional amendment on other grounds. The defendant has the burden to show the identification procedure was unduly suggestive. *State v. Harris,* 2nd Dist. No. 19796, 2004–Ohio–3570, ¶ 19. If the defendant meets that burden, the court must then consider whether the identification, viewed under the totality of the circumstances, is reliable despite its suggestive character. *Id.,* citing *State v. Wills,* 120 Ohio App.3d 320, 324, 697 N.E.2d 1072 (1997). If the pretrial confrontation procedure was not unduly suggestive, any remaining questions as to reliability go to the weight of the identification, not its admissibility, and no further inquiry into the reliability of the identification is required. *Id.* at 325, 697 N.E.2d 1072.

{¶32} The focus under the totality of the circumstances approach is on the reliability of the identification, not the identification procedures. *State v. Lott* (1990), 51 Ohio St.3d 160. R.C. 2933.83 sets forth the minimum requirements to be followed for a photo lineup procedure.

{¶33} On July 2, 2011, Detective Victor George and Officer Brian McWilliams presented Hoagland two photo line-ups while she was at Aultman Hospital. Each photo line-up contained pictures of male suspects. The first contained a photo of Appellant, and the second a photo of Joseph Berry, otherwise known as "J." Appellant maintains Hoagland was in intensive care, highly sedated, and recovering from a facial surgery

the previous morning. She could not speak, and could not handle the documents. Hoagland had a strong reaction to Appellant's photo.

**{¶34}** On July 1, 2011, Crolley was admitted to Mercy Medical Center, and then life-flighted to Metro Cleveland. On July 28, 2011, Sergeant Victor George and Officer William Guthrie traveled to Crolley's home in Uhrichsville, Ohio to present her with the photo line-ups. The officers placed Crolley in the police vehicle and presented her with the two photo arrays. Crolley made a positive identification of Appellant as being a "5," and Joseph Berry being a "4." Appellant maintains his picture in the arrays shows he is wearing a different color and style of shirt than the individuals in the other photos.

**{¶35}** Upon review of the record and the testimony, we do not find the officers failed to comply with the provisions of R.C. 2933.83, nor do we find the procedures utilized were unduly suggestive or created a substantial likelihood of misidentification. Accordingly, we find the trial court properly overruled Appellant's motion to suppress the identifications.

**{¶36}** The second assignment of error is overruled.

III.

**{¶37}** In the third assignment of error, Appellant maintains the trial court abused its discretion in permitting the State to admit the testimony of Joshua Kennedy by way of deposition when his testimony had not been subject to cross-examination with newly discovered evidence.

**{¶38}** Joshua Kennedy's deposition testimony was taken via Skype on March 2, 2012, while Kennedy was serving in the armed forces in Afghanistan.

**{¶39}** This matter proceeded to trial on March 6, 2012, and the trial court declared a mistrial on March 8, 2012.

**{¶40}** On March 15, 2012, the State supplemented discovery providing Appellant with the names of newly discovered witnesses, including Natasha Fields and Johnny Gearheart.

**{¶41}** On March 19, 2012, the trial court declared a second mistrial.

**{¶42}** On April 24, 2012, the matter proceeded to jury trial for the third time. Appellant moved to exclude the videotaped deposition of Kennedy, arguing the State had added additional witnesses and the deposition would violate his Sixth Amendment right to confront witnesses. Appellant argued although he had an opportunity to cross-examine Kennedy, he did not have an adequate and meaningful opportunity to cross-examine him in light of the State's additional witnesses.

**{¶43}** The record demonstrates Appellant did in fact have a meaningful opportunity to cross-examine Kennedy during the first deposition. Further, Appellant could have requested a second deposition following the discovery of the additional evidence, but failed to do so.

**{¶44}** Appellant's third assignment of error is overruled.

IV.

**{¶45}** In the fourth assignment of error, Appellant argues the trial court abused its discretion in denying Appellant's introduction of an alibi defense.

**{¶46}** The Ohio Rules of Criminal Procedure require written notice of an alibi not less than seven days prior to trial. Ohio R. Crim. Proc. 12. Absent notice, a trial court may exclude the alibi evidence "unless the court determines that in the interest of justice

such evidence should be admitted."  *State v. Thayer* (1931), 124 Ohio St. 1; *State v. Nooks* (1930), 123 Ohio St. 190.

**{¶47}** Here, Appellant filed a motion to preserve and produce video surveillance of the SARTA bus depot on April 11, 2012.  An order granting the same was filed on April 13, 2012.  On April 20, 2012, Appellant filed a notice of supplemental alibi.  On April 24, 2012, the matter proceeded to jury trial, and the State objected to the notice of alibi arguing the same had not been timely filed.

**{¶48}** The record indicates two previous mistrials had been declared in this matter, and Appellant filed a notice of alibi prior to the commencement of the third trial. Appellant possessed the information for months prior to filing the notice.  Therefore, we find the trial court did not abuse its discretion in denying the notice of alibi.

**{¶49}** The fourth assignment of error is overruled.

V.

**{¶50}** In the fifth assignment of error, Appellant maintains the trial court erred in imposing non-minimum, maximum consecutive sentences.

**{¶51}** In *State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912, a plurality opinion, the Ohio Supreme Court established a two-step procedure for reviewing a felony sentence. The first step is to "examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law." *Kalish* at ¶ 4. If this first step is satisfied, the second step requires the trial court's decision be reviewed under an abuse-of-discretion standard. *Id.* Furthermore, " * * * the right to appeal a sentence under R.C. 2953.08(C) does not mean that consecutive sentences for multiple

convictions may not exceed the maximum sentence allowed for the most serious conviction." See *State v. Beverly,* Delaware App.No. 03 CAA 02011, 2003–Ohio–6777, ¶ 17, quoting *State v. Haines* (Oct. 29, 1998), Franklin App.No. 98AP–195. But we have recognized that "[w]here the record lacks sufficient data to justify the sentence, the court may well abuse its discretion by imposing that sentence without a suitable explanation." *State v. Firouzmandi,* Licking App.No.2006–CA–41, 2006–Ohio–5823, ¶ 52.

**{¶52}** R.C. 2929.11 and 2929.12 require consideration of the purposes and principles of felony sentencing, as well as the factors of seriousness and recidivism. *See State v. Mathis,* 109 Ohio St.3d 54, 846 N.E.2d 1, 2006–Ohio–855, ¶ 38.

**{¶53}** R.C. 2929.14(C) reads,

**{¶54}** "(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

**{¶55}** "(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

**{¶56}** "(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses

committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

**{¶57}** "(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender."

**{¶58}** At the sentencing hearing herein, the trial court indicated Appellant had committed the offenses while on judicial release and community control for a previous conviction of aggravated robbery committed nine months prior to his arrest herein.

**{¶59}** Upon review, we find the trial court properly considered the general sentencing guidance factors, and we hold the trial court's consecutive, non-minimum sentences in this matter are not unreasonable, arbitrary or unconscionable. We further hold said sentences are not contrary to law.

**{¶60}** Accordingly, we find the trial court did not err in sentencing Appellant herein, and the fifth assignment of error is overruled.

VI.

**{¶61}** In the sixth assignment of error, Appellant argues his convictions for attempted murder, firearm specifications, repeat violent offender specifications and having a weapon under disability are against the manifest weight and sufficiency of the evidence.

**{¶62}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly

lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"*State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

**{¶63}** An appellate court's function when reviewing the sufficiency of the evidence is to determine whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991).

**{¶64}** Appellant was convicted of two counts of attempted murder, pursuant to R.C. 2903.02(A) and 292302(A); two counts of felonious assault, pursuant to R.C. 2903.11(A)(1) or R.C. 2903.11(A)(2); two firearm specifications, pursuant to R.C. 2941.145; two repeat violent offender specifications, pursuant to R.C. 2941.149; and one count of having weapons under disability, pursuant to R.C. 2923.13(A)(2). Appellant does not assert the State failed to prove an element of the offenses of which he was convicted; rather, he argues mistaken identity.

**{¶65}** Appellant again suggests the two eyewitness identifications are suspect due to the photo array procedure and the nature of their competency due to the witness' head injury. Appellant argues absent the witness identification there is no other material evidence to convict Appellant of the offenses.

**{¶66}** Based upon our analysis and disposition of Appellant's first and second assigned errors, we find Appellant's sixth assigned error to be without merit and overrule same.

VII.

{¶67} In the seventh assignment of error, Appellant asserts the errors committed at trial herein were cumulative and deprived Appellant of a fair trial; thereby requiring reversal of Appellant's conviction and sentence.

{¶68} In light of our analysis and disposition of Appellant's first six assigned errors, Appellant's seventh assigned error is overruled.

{¶69} Appellant's convictions and sentence in the Stark County Court of Common Pleas are affirmed.

By: Hoffman, P.J.

Farmer, J. and

Wise, J. concur

s/ William B. Hoffman_____
HON. WILLIAM B. HOFFMAN


s/ Sheila G. Farmer_____
HON. SHEILA G. FARMER


s/ John W. Wise _____
HON. JOHN W. WISE

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

STATE OF OHIO                          :
                                       :
    Plaintiff-Appellee                 :
                                       :
-vs-                                   :          JUDGMENT ENTRY
                                       :
AARON MICHAEL OESTER                   :
                                       :
    Defendant-Appellant                :          Case No. 2012CA00118


For the reasons stated in our accompanying Opinion, Appellant's convictions and

sentence in the Stark County Court of Common Pleas are affirmed.  Costs to Appellant.


                    s/ William B. Hoffman_____
                    HON. WILLIAM B. HOFFMAN


                    s/ Sheila G. Farmer_____
                    HON. SHEILA G. FARMER


                    s/ John W. Wise _____
                    HON. JOHN W. WISE